650 F.Supp. 981 (1987)
The WESTERN CASUALTY AND SURETY COMPANY, Plaintiff,
v.
CITY OF PALMYRA, et al., Defendants.
No. 85-2192C(6).
United States District Court, E.D. Missouri.
January 12, 1987.
John H. Marshall, St. Louis, Mo., for plaintiff.
*982 John G. Enright, John H. Quinn, III, St. Louis, Mo., Charles L. Hickman, Hannibal, Mo., Richard K. Zerr, St. Charles, Mo., for defendants.

MEMORANDUM OPINION
GUNN, District Judge.
IT IS HEREBY ORDERED, ADJUDGED and DECREED that judgment be and it is entered in favor of plaintiff on plaintiff's complaint.
Plaintiff the Western Casualty and Surety Company (Western Casualty) brought this declaratory judgment action pursuant to 28 U.S.C. § 2201 seeking a determination of liability under an insurance policy issued to defendant City of Palmyra. The parties have stipulated to the facts. The Court enters the following brief summary of the facts as stipulated by the parties and conclusions of law in accordance with Rule 52, Fed.R.Civ.Pro.

FINDINGS OF FACT
Western Casualty issued policy number AGC560921 to the City of Palmyra and Board of Public Works, Palmyra, Marion County, Missouri with a policy period running from December 1, 1982 though December 1, 1983. The dispute as to coverage at issue in the declaratory judgment action before this Court arose out of incidents occurring in April 1983 which in turn gave rise to two lawsuits against the City of Palmyra and several of its employees and officers filed in the Northern Division of this District in May and July of 1985. The underlying lawsuits were brought by Harold White, former sheriff of Palmyra, and Rey H. and Storie Lynn Orta, respectively. The complaints, which were substantially identical, alleged that the City of Palmyra, through its mayor, Lawrence A. Wellman, its Chief of Police, Raymond Chamberlain, Jr., and several police officers, Larry Brockman, Daniel Cosgrove, James L. Davis and James Franklin, unlawfully intercepted wire communications of White and the Ortas between April 2nd and April 15th, 1983. As a result of the wiretaps, criminal charges were brought against White and the Ortas upon which they were subsequently convicted. The civil damage actions brought in the Northern Division sought relief against defendants City of Palmyra and its officers on three counts: 1) violation of 18 U.S.C. § 2510, et seq., the federal wiretap statute, and of the fourth and fourteenth amendments made actionable pursuant to 42 U.S.C. § 1983; 2) negligent training of police officers; and 3) unlawful public disclosure of private facts.
On December 19, 1984 Western Casualty sent a letter to defendants Wellman, Chamberlain, Brockman, Cosgrove, Davis and Franklin acknowledging receipt of photocopies of letters from Harold White's attorney notifying them of his intention to sue. Western Casualty stated in its December 19th letter that the policy in effect at the time of the wire interceptions did not provide coverage. By letter of July 30, 1985 Western Casualty informed defendants Wellman, Chamberlain, Brockman, Cosgrove, Davis and Franklin that it would provide a defense in the underlying actions upon a reservation of rights. Western Casualty further informed them of its intent to file the instant declaratory judgment action. Defendants declined Western Casualty's proffer of a defense on the basis of a perceived conflict of interest and engaged independent counsel to defend in the underlying actions.
Two sections of the insurance policy in effect in 1983 are pertinent to a determination of liability in this action. Part I, Comprehensive General Liability Insurance, states:
1. Coverage A  Bodily Injury Liability Coverage B  Property Damage Liability
The Western will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
A. bodily injury or
B. property damage
to which this insurance applies, caused by an occurrence, and The Western shall have the right and duty to defend any *983 suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient....
Bodily injury, property damage and occurrence are defined as follows:
"bodily injury" means bodily injury, sickness, or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom....
"property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period....
"occurrence" means an accident, including continuous or repeated exposure to conditions, which result in bodily injury or property damage neither expected nor intended from the standpoint of the insured....
This comprehensive general coverage was expanded through payment of an additional premium both to cover employees of the named insured acting within the scope of their duties and to cover certain enumerated intentional torts committed by such employees. The "Broad Form Extension Endorsement" provides in part:
Additional Insured (Employees)
The "persons insured" provision is amended to include any employee of the named insured while acting within the scope of his duties as such....
The "Broad Coverage Extension Endorsement" of the policy states:
1. Coverage Agreement
The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury (herein called "personal injury") sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the named insured's business:
A. false arrest, detention or imprisonment, or malicious prosecution.
B. the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or an utterance in violation of an individual's right of privacy, except publications or utterances in the course of or relating to advertising, broadcasting, or telecasting.
C. wrongful entry or eviction, or other invasion of the right of private occupancy.
The "Broad Coverage Extension Endorsement" is subject to the following pertinent exclusion:
This insurance does not apply:
(b) to personal injury arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured.

CONCLUSIONS OF LAW
In determining an insuror's obligation to defend under a policy, a court must compare the claims asserted in the complaint with the offenses listed in the coverage provisions of the policy. Missouri Terrazzo co. v. Iowa National Mutual Insurance Co., 740 F.2d 647, 652 (8th Cir. 1984); Butters v. City of Independence, 513 S.W.2d 418, 424 (Mo.1974). If the allegations of the complaint "state a claim which is potentially or arguably within the policy's coverage, then the insuror must defend the suit." Missouri Terrazzo, 740 F.2d at 652, citing Howard v. Russell Stover Candies, Inc., 649 F.2d 620, 624 (8th Cir.1981); Hartford Accident & Indemnity v. Krekeler, 491 F.2d 884, 886-87 (8th Cir.1974). Ambiguities in the contract are to be resolved in favor of the insured. Russell Stover, 649 F.2d at 623. However, where the policy is unambiguous it is to be given effect according to its terms, and a court is not to read in contractual obligations where none were intended by the parties. M.F.A. Mutual Insurance Co. v. *984 American Family Mutual Insurance Co., 654 S.W.2d 230, 232 (Mo.App.1983); Universal Towing Co. v. Hartford Fire Insurance Co., 421 F.2d 379 (8th Cir.1970).
In Counts I and IV of the underlying action brought by White, and in Counts I, IV, V, VI and IX of the underlying action brought by the Ortas, plaintiffs seek to recover for injuries allegedly suffered as a result of the unlawful wiretap instituted by defendant City of Palmyra and its officers. After reviewing the policy this Court concludes that it does not provide coverage for the injuries alleged. First, plaintiffs in the underlying suits do not allege "bodily injury" or "property damage" within the policy definitions; hence, their injuries are not covered by Part I, Comprehensive General Liability Insurance. Furthermore, the wiretap does not constitute an "occurrence" within the meaning of that section.
Broadly construed, plaintiffs' claims on the aforementioned counts might be deemed to fall under item (C) of the Broad Coverage Extension Endorsement as constituting "other invasion of the right of private occupancy." The alleged conduct of the defendants in the underlying suit, however, falls squarely within the endorsement exclusion:
This insurance does not apply:
(b) to personal injury arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured.
This Court finds that the mere casting of Count IV of White's complaint and Counts IV and IX of the Ortas' complaint as claims for damages for invasion of privacy does not alter their character as "arising out of" the unlawful wiretap.[1] The Court therefore concludes that the insurance policy unambiguously precludes coverage on these counts.
The Court notes that while it has discovered no Missouri cases directly on point, plaintiff Western Casualty has drawn its attention to several cases from other jurisdictions upholding unlawful conduct exclusions in insurance contracts. See, e.g., American Home Assurance Co. v. Diamond Tours, 78 A.D.2d 801, 433 N.Y.S.2d 116 (N.Y.App.1980) (exclusion upheld that denied coverage to insured who had committed multiple frauds); Applewhite v. City of Baton Rouge, 380 So.2d 119 (La. App.1979) (exclusion upheld that denied coverage in suit against police officer charged with sexual assault); Traveler's Indemnity Co. v. Nieman, 563 S.W.2d 724 (Ky.App.1978) (exclusion upheld that denied coverage to pharmacist charged with dispensing drugs without prescription). The case cited by defendants to the contrary is inapposite, as it involved conduct that could "sensibly be said to have been both intentional and in good faith." Bensalem Township v. Western World Insurance Co., 609 F.Supp. 1343, 1351, n. 9 (E.D.Pa.1985) (distinguishing Diamond Tours, Applewhite and Travelers). This characterization does not fit the conduct in the underlying suits.
In Count II of White's complaint and Counts II and VII of the Ortas' complaint, plaintiffs seek to recover for injuries suffered as a result of defendant City of Palmyra's negligent failure to train its police officers. While this claim does not directly arise out of the unlawful wiretap, and hence is not expressly excluded from coverage, the injuries alleged by plaintiffs constitute neither "bodily injury" or "property damage" under Part I nor "personal injury" under the Broad Coverage Extension Endorsement, as they do not arise out of any of the enumerated acts therein specified.[2] This Court concludes that policy coverage *985 does not extend to these counts of the underlying actions.
Accordingly, this Court declares judgment for plaintiff Western Casualty. The insurance policy at issue in this suit does not create an obligation to provide a defense in the underlying actions in the Northern Division of this District.
NOTES
[1] Neither does the Court accept defendant City of Palmyra's characterization of 18 U.S.C. § 2520, which creates a civil cause of action for damages for violation of the federal wiretap statute, as remedial rather than penal and hence without exclusion (b). The civil damage claim turns on proof of a "wilful violation of a penal statute".
[2] Plaintiff Western Casualty further seeks to disclaim liability under the Broad Coverage Extension Endorsement on the ground that the officers were not acting "within the scope of their duties as such" in conducting the illegal wiretap. Defendants argue that plaintiff's failure to raise this point in its initial reservation of rights serves to estop it from asserting it now. Hounihan v. Farm Bureau Mut. Ins. Co. of Mo., 523 S.W.2d 173 (Mo.App.1975). As this Court concludes that policy coverage does not extend to the type of injury plaintiffs allege in the underlying suit, it need not consider the competing arguments on the estoppel issue further.