Patricia GARVIS, Plaintiff,

Robert Demuth, Jr., Demuth Insurance Agency, and Utica Mutual Insurance Company, Plaintiffs,

v.

EMPLOYERS MUTUAL CASUALTY COMPANY, Defendant.

No. C4–92–1562.

Supreme Court of Minnesota.

March 19, 1993.

James E. Malters, Von Holtum, Malters & Shepard, Worthington, for Patricia Garvis.

Clarance E. Hagglund, Britton D. Weimer, James R. Harries, Hagglund Law Firm, P.A., Minneapolis, for Robert Demuth, Jr., et al.

Kay Nord Hunt, Steven L. Theesfeld, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for defendant.

SIMONETT, Justice.

We are presented with five certified questions from the federal district court relating to whether an insurer had a duty under its policy to defend and indemnify a claim for emotional distress asserted by an injured claimant against the insured.

Plaintiff Patricia Garvis thought she had purchased auto insurance from Robert Demuth, Jr., and the Demuth Agency. Demuth, however, failed to process her insurance application to Allstate Insurance Company. On February 3, 1990, Garvis was in a serious two-car accident, in which one of her passengers was killed, her son was injured, and she herself was injured. The very next day, upon learning of the accident, Demuth called Garvis at the hospital where she was a patient and told her she did not have insurance coverage for the accident. Demuth then attempted to cover up his failure to submit the application by returning the uncashed premium checks and backdating the letter of transmittal.

Patricia Garvis promptly commenced a lawsuit in state court against Robert Demuth, Jr., Demuth Insurance, and Allstate Insurance Company. The complaint alleged three causes of action: Count I, against Demuth and his agency for intentional or reckless infliction of emotional distress caused by the telephone call; Count II, against Demuth and his agency for negligent failure to provide auto insurance coverage; and Count III, against all the defendants for breach of contract to insure.

Demuth tendered defense of this lawsuit to Utica Mutual Insurance Company, his errors and omissions carrier, and to Employers Mutual Casualty Company, his comprehensive general liability carrier. Utica accepted the tender (reserving defenses as to intentional conduct and punitive damages), and provided Demuth with defense counsel. Employers Mutual denied coverage.

Eventually, Garvis settled her lawsuit, including settlement of the Count I cause of action for emotional distress under a so-called *Miller–Shugart* agreement with Demuth and the Demuth Agency. A new action was then commenced in state district court—the action now before us—in which plaintiffs Patricia Garvis and Utica Mutual Insurance Company are suing defendant Employers Mutual to establish coverage under defendant's policy for the emotional distress claim and to enforce the *Miller–Shugart* settlement.[1] This case was removed to federal district court by defendant Employers Mutual.

Employers Mutual's comprehensive general liability policy provides two types of coverage: Coverage A for *bodily injury;* and Coverage B for *personal injury.* Plaintiffs claim both coverages apply here. Employers Mutual contends, among other things, that it was never apprised by the complaint or otherwise of facts that would give rise to a duty to defend under its "bodily injury" coverage, and that Patricia Garvis' claim of emotional distress did not qualify as a "personal injury."

We now turn to the certified questions set out below.[2] We will discuss the questions in a different order than presented, and further facts will be added as we go along.

## I.

■■■ The first certified question asks whether the allegations in the complaint with respect to infliction of emotional distress set out facts constituting a "bodily injury" so as to trigger the insured's duty to defend and to indemnify. Generally, the insurer's obligation to defend is determined by comparing the allegations of the complaint with the relevant policy language. *See Prahm v. Rupp Constr. Co.*, 277 N.W.2d 389 (Minn.1979). The critical para-

1. The complaint in this suit alleges Patricia Garvis is suing individually and as assignee of Robert Demuth, Jr., and Demuth Insurance Agency, and that Utica is suing individually and as "partial assignee" of Patricia Garvis.

  Garvis settled her emotional distress claim under a *Miller–Shugart* agreement whereby Demuth and his agency confessed judgment of $200,000, and Demuth then assigned his cause of action against Employers Mutual to Garvis. *See Miller v. Shugart,* 316 N.W.2d 729 (Minn. 1982). It appears, however, that Utica paid Garvis' part of the $200,000, and as a "partial assignee" seeks to recoup its payment from Employers Mutual in this lawsuit, contending that Employers Mutual's coverage was primary. The certified questions do not involve this settlement agreement.

2. The five certified questions (the first two edited) are:

  1. Do the allegations of the complaint with respect to infliction of emotional distress set out facts which trigger Employers Mutual's duty to defend and to indemnify "for a bodily injury"? If so, was the "bodily injury" a result of an "occurrence" or "accident" as defined in the policy?

  2. Do the allegations of the complaint with respect to infliction of emotional distress set out facts sufficient to trigger Employers Mutual's duty to defend or indemnify for "personal injury"?

  3. Was Demuth's telephone call to Garvis a "wrongful entry into a room that person occupies" for the purpose of personal injury coverage under the Employers policy?

  4. Are Garvis' physical manifestations caused by her emotional distress "bodily injuries" under the Employers policy?

  5. Was Employers obligated to conduct an investigation beyond the four corners of the complaint?

graph of Garvis' complaint in the underlying action reads:

That on February 4, 1990 Defendant Robert Demuth, Jr. called Plaintiff, while she was in the hospital and suffering from a concussion, broken arm, severely lacerated leg, and broken clavicle and while in a state of extreme emotional distress as a result of her significant injuries, significant injuries to her son and the death of her friend and passenger, and Defendant did inform her that she did not have insurance coverage and that she would be solely financially responsible for the death of her friend and for her own medical bills. That said action was done intentionally or with reckless disregard for Plaintiff's emotional state and did cause her extreme and severe emotional distress.

Employers Mutual's policy covers damages for "bodily injury." The term "bodily injury" is defined as "bodily injury, sickness, or disease sustained by a person * * *."

■ The problem with plaintiff's complaint is it alleges only that defendant Demuth's conduct "did cause her extreme and severe emotional distress." Emotional distress is not an injury to the body, but to the psyche. Words in an insurance policy are to be given their ordinarily understood meaning, and "bodily injury" in this policy is not ambiguous. An injury to the body does not include nonbodily emotional distress. *See, e.g., Clemens v. Wilcox,* 392 N.W.2d 863, 866 (Minn.1986) ("bodily injury" does not include nonphysical harm such as mental suffering and emotional distress); *Hamlin v. Western Nat'l Mut. Ins.*

*Co.,* 461 N.W.2d 395, 397 (Minn.App.1990) (mental suffering from sexual harassment not a bodily injury).

We do not understand plaintiffs to disagree that emotional distress is not a bodily injury. They argue, however, that emotional distress which manifests itself physically should be deemed a "bodily injury" within the meaning of the insurance policy. The fourth certified question asks whether or not this is so, and we should answer that question here because it bears on the first certified question.

We conclude that emotional distress with appreciable physical manifestations can qualify as a "bodily injury" within the meaning of the insurance policy. We do not think the term "bodily injury," as ordinarily understood, would draw a nice distinction between emotional distress and its harmful physical consequences, if any; rather, "bodily injury" would be thought of as encompassing both because they are so closely interrelated. Particularly do we think this is so when the term "bodily injury" appears in an insurance policy designed to protect the insured against tortious conduct, and where there is tort law recognizing infliction of emotional distress as a viable cause of action if accompanied by physical manifestations.[3]

But here again, returning to the allegations of plaintiff's complaint, there is no allegation of any physical manifestation of plaintiff's emotional distress.[4] Indeed, from a reading of the complaint, one learns only that plaintiff was already suffering from extreme emotional distress from the auto accident even before the agent's

**3.** Minnesota has recognized causes of action for intentional and negligent infliction of emotional distress when accompanied with physical manifestations. *See, e.g., Stadler v. Cross,* 295 N.W.2d 552, 553 (Minn.1980); *M.H. v. Caritas Family Services,* 488 N.W.2d 282, 290 (Minn. 1992); *Quill v. Trans World Airlines, Inc.,* 361 N.W.2d 438, 443–44 (Minn.App.1985), *pet. for rev. denied,* April 18, 1985; *Hamlin v. Western Nat'l Mut. Ins. Co.,* 461 N.W.2d 395, 397 (Minn. App.1990). Because emotional distress is highly subjective, often transient, and easily alleged, our tort law, in addition to a "zone of danger" requirement, also requires physical manifesta-

tion of the distress as proof of the genuineness and gravity of the emotional suffering.

**4.** It must be kept in mind that we are not dealing with whether the complaint alleges a viable cause of action but whether the complaint alleges facts giving rise to an insurer's duty to defend and indemnify (which includes a duty to defend groundless claims). Thus, here, Employers Mutual would have a duty to defend a claim for emotional distress alone, even though this is not a viable claim, except for the fact that policy coverage for "bodily injury," by definition, does not cover a claim for emotional distress alone.

phone call. Plaintiffs argue that the insurer should have assumed, in view of the allegation of emotional distress, that there were physical manifestations. But we see no reason why the insurer should have to make such an assumption. Not every case of emotional distress results in physical manifestations. *See Clemens v. Wilcox,* 392 N.W.2d 863 (Minn.1986). *Cf. Egeland v. City of Minneapolis,* 344 N.W.2d 597 (Minn.1984) (discussing compensability of mental trauma in the workers' compensation area). It is possible, too, that a plaintiff might be trying to recover for emotional suffering alone, notwithstanding our cases to the contrary. Knowing the importance of insurance coverage, it would seem that plaintiff would have alleged facts necessary to implicate coverage, if, in fact, physical manifestations of her distress had occurred as a result of the agent's phone call.

We answer the first certified question "no." Because we conclude there is no "bodily injury," we do not need to answer the second part of the first question which asks whether the injury arose out of an "occurrence" or "accident." Our answer to the fourth certified question is that emotional distress with appreciable physical manifestations does constitute a "bodily injury."

## II.

We next take up the fifth certified question, which is, "Was Employers obligated to conduct an investigation beyond the four corners of the complaint?"

■ This court has consistently stated that where the insurer has no knowledge to the contrary, it may make an initial determination of whether or not it is obligated to defend from the facts alleged in the complaint against its insured. *See State Farm Fire & Cas. Co. v. Williams,* 355 N.W.2d 421, 424–25 (Minn.1984); *Republic Vanguard Ins. Co. v. Buehl,* 295 Minn. 327, 332–33, 204 N.W.2d 426, 429 (1973); *Crum*

*v. Anchor Cas. Co.,* 264 Minn. 378, 385, 119 N.W.2d 703, 708 (1963). Where the pleadings do not raise a claim arguably within the scope of coverage, the insurer has no duty to defend or investigate further to determine whether there are other facts present which trigger such a duty. *Republic Vanguard Ins. Co., supra; Brown v. State Auto. & Cas. Underwriters,* 293 N.W.2d 822, 825–26 (Minn.1980).

Of course, if the insurer is aware of facts indicating that there may be a claim, either from what is said directly or inferentially in the complaint, or if the insured tells the insurer of such facts, or if the insurer has some independent knowledge of such facts, then the insurer must either accept tender of the defense or further investigate the potential claim. *Johnson v. Aid Ins. Co. of Des Moines, Iowa,* 287 N.W.2d 663, 665 (Minn.1980).

■ In this case, none of the facts alleged in plaintiff's complaint put the insurer on notice of a claim within the policy coverage. Twice Demuth tendered defense of the lawsuit to Employers Mutual but in neither letter tendering the defense was the insurer told that plaintiff was claiming her emotional distress had physical manifestations.[5] *Compare Bituminous Cas. Corp. v. Travelers Ins. Co.,* 122 F.Supp. 197, 201 (D.Minn.1954), where the insured, in tendering defense to the insurer, informed the insurer of facts implicating coverage. (This case is quoted with approval in *Crum, supra.*)

Plaintiffs argue that Employers Mutual was invited to participate in discovery proceedings, and that if it had done so it would have learned that Patricia Garvis was claiming her emotional distress had manifested itself in hyperventilation requiring oxygen, an ulcer and a sleep disorder. The problem with this argument is that Employers Mutual, having initially denied coverage on the basis of the pleadings, was under no obligation to participate in subsequent discovery proceedings.

---

5. On the two occasions Demuth tendered defense of the Garvis lawsuit, he urged only that Garvis' claim of "bodily injury" was not barred by the intentional act exclusion in Employers

Mutual's policy, and that there was a "personal injury" because the agent's telephone call was a "wrongful entry."

Demuth offers no reason for failing to inform Employers Mutual of what it had learned during discovery about the physical consequences of Garvis' emotional distress. Nor did Garvis see fit to so advise Employers Mutual. It may be that Garvis saw no need to give Employers Mutual more information about her claim because she already had coverage for the claim with Utica; indeed, Employers Mutual's denial of coverage was seized upon by Garvis and Demuth as an opportunity to make a so-called *Miller–Shugart* settlement, notwithstanding Utica had admitted coverage for the emotional distress claim and had agreed to pay Garvis for her emotional distress claim in some amount.

Ordinarily we hesitate to answer a certified question as fact-specific as the one presented here. But on the basis of the joint statement of facts submitted by the parties, we see no obligation on Employers Mutual to have investigated beyond the four corners of the complaint, and so we answer the fifth question "no."

### III.

■ This leaves the second and third certified questions, which are really variations of each other. These two questions ask whether Demuth's telephone call to Garvis can be considered a "wrongful entry into a room that person occupies" for the purposes of *personal injury* coverage under Employers' policy. Our answer is "no."

Coverage B of Employers Mutual's policy covers damages for "personal injury," which is defined as "injury, other than 'bodily injury,' arising out of one or more of the following offenses: * * *." The policy provision then lists five offenses which are covered (such as false arrest, malicious prosecution, libel, etc.), with the third offense being "[w]rongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies."

Plaintiffs argue that insurance agent Demuth wrongfully entered Garvis' hospital room "via the telephone." Plaintiff Garvis notes, enterprisingly enough, that one telephone company says its service enables the caller to "reach out and touch someone."

Calling someone who has a telephone in their room would not seem to be an unlawful use of the telephone; rather, the wrongfulness is in the message conveyed, which callously disturbed the receiver's emotional well-being. It is true, as plaintiffs point out, that other jurisdictions have found "personal injury" coverage for constructive invasion of someone's right to private occupancy; but in these cases the insurance policy expressly provides coverage for "wrongful entry, eviction, *or other invasion of right of private occupancy*" (emphasis added). *See, e.g., Titan Holdings Syndicate v. City of Keene, N.H.*, 898 F.2d 265, 272–73 (1st Cir.1990) (noxious fumes, noises and lights from the insured's sewage treatment plant interfered with plaintiffs' quiet enjoyment of their homestead; held, this constitutes "other invasion of the right of private occupancy"). Employers Mutual's policy has no such expanded language.

■ Plaintiffs argue that "wrongful entry" is akin to trespass, pointing out the law recognizes a constructive trespass. We agree there is a kinship, but the two concepts are not quite the same. Trespass encompasses any unlawful interference with one's person, property or rights. 19A *Dunnell Minn. Digest* 2d *Trespass* § 1.00 (3d ed. 1978). (Often, too, the trespass must be intentional. *See Titan, supra.*) Wrongful entry, on the other hand, is ordinarily understood as related to the invasion of an interest in real property, and it is in this sense we think it is used in "personal injury" insurance coverage. *See Cincinnati Ins. Co. v. Davis*, 153 Ga.App. 291, 294, 265 S.E.2d 102, 105 (1980), *cert. dismissed*, 246 Ga. 46, 268 S.E.2d 352 (1980), where the landlord's entry into the leased warehouse under a defective legal process was held to be a "wrongful entry," and the conversion of the tenant's merchandise in the warehouse constituted damages arising out of the wrongful entry. *Cf. Western Cas. & Sur. Co. v. City of Palmyra*, 650 F.Supp. 981 (E.D.Mo.1987) (categorizing an illegal wiretap as an "invasion of the right of private occupancy," rather than as a "wrongful entry"). Significant, too, is that

the policy could have listed trespass as a covered offense but did not do so.

As noted, we answer the second and third certified questions "no."

Questions answered.