*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0546**

Corey Pearson,
Appellant,

vs.

St. Cloud Hospital, et al.,
Respondents,

Emergency Physicians Professional Association,
Respondent.

**Filed May 13, 2024**
**Affirmed**
**Cochran, Judge**

Stearns County District Court
File No. 73-CV-21-6760

Sarah R. Jewell, River Valley Law, P.A., Waite Park, Minnesota (for appellant)

Cally Kjellberg-Nelson, Quinlivan & Hughes, P.A., St. Cloud, Minnesota (for respondents
St. Cloud Hospital, et al.)

Michael J. Moberg, Elaine E. Luthens, Jackson Lewis P.C., Minneapolis, Minnesota (for
respondent Emergency Physicians Professional Association)

        Considered and decided by Cochran, Presiding Judge; Ede, Judge; and Halbrooks,

Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

**NONPRECEDENTIAL OPINION**

**COCHRAN**, Judge

Appellant challenges the summary-judgment dismissal of her claims under the Minnesota Human Rights Act (MHRA), her claims under the Minnesota whistleblower act (MWA), and her claims for negligent hiring, supervision, and retention. She also challenges the district court's denial of her motions to compel discovery. Because no genuine issues of material fact exist precluding the grant of summary judgment for respondents and any error related to the motions to compel is harmless, we affirm.

## FACTS

Respondent St. Cloud Hospital is one of several medical facilities that make up respondent CentraCare Health System (collectively, CentraCare). Appellant Corey Pearson worked for CentraCare as a registered nurse at St. Cloud Hospital in the emergency trauma center. Although CentraCare employed the nurses who worked in the hospital's emergency trauma center during the relevant period, it did not employ the physicians. Instead, CentraCare contracted with respondent Emergency Physicians Professional Association (EPPA), which in turn employed the physicians who worked in the emergency trauma center.

Pearson left her employment with CentraCare in 2020 and initiated this lawsuit in 2021. The lawsuit was based on alleged harassment and retaliation by employees of CentraCare and EPPA.

2

*Background*[1]

At the time of the underlying events, CentraCare's director of the emergency trauma center for the St. Cloud Hospital was responsible for managing the nurses in the unit. The CentraCare director also worked in a partnership with an EPPA medical director, who managed the EPPA physicians working in the emergency trauma center.

On February 25, 2020, Pearson told the CentraCare director that Dr. S, an EPPA physician, made sexual and inappropriate comments toward her while at work. She also reported that she had concerns about some nurses having relationships with doctors and acting unprofessionally. That day, the CentraCare director informed the EPPA medical director about Dr. S's conduct toward Pearson. Later that same day, the EPPA medical director placed Dr. S on administrative leave. The EPPA medical director spoke with Dr. S, who denied engaging in "sexual harassment," but did not deny engaging in the conduct reported by Pearson. EPPA terminated Dr. S's employment in March 2020.

On February 25, after telling her concerns to the CentraCare director, Pearson completed her shift in a different part of St. Cloud Hospital—the behavioral-health area—to avoid interacting with Dr. S. At the end of the shift, a different EPPA physician, Dr. B, approached Pearson. He asked her "if he had done anything that offended [her]." Dr. B followed up by explaining that Dr. S had told him that Pearson had recently reported sexual harassment in the workplace and stated that Dr. B was involved. The following day,

---

[1] Consistent with the standard of review, our recitation of the facts is based on the evidence viewed in the light most favorable to Pearson as the nonmoving party. *See Kenneh v. Homeward Bound, Inc.*, 944 N.W.2d 222, 228 (Minn. 2020). "[W]e do not weigh facts or make credibility determinations." *Id.*

Pearson worked her shift without incident. At the start of Pearson's next shift, on March 2, Dr. B pulled Pearson aside. Pearson testified that Dr. B seemed upset and complained that "because of [her] reporting they had to do this sensitivity training" and that "having to do this training, it's a bunch of bullsh-t." Following this interaction, Pearson broke out in hives and the CentraCare director allowed her to leave work early. Throughout March 2020, Pearson requested that CentraCare take her off the schedule at St. Cloud Hospital.

On April 6, 2020, Pearson met with the EPPA medical director, who informed her that Dr. S had been terminated. Later that month, Pearson requested to return to work in the behavioral-health area and to work a shift alongside another nurse in case she needed to leave early. CentraCare allowed her to do so, and Pearson worked a partial shift on April 29. Pearson testified that other nurses "ignored" her during the shift and that one doctor gave her a "different look." Pearson worked her final shift at the emergency trauma center on May 8, alongside another nurse. On that day, Pearson was working "in the middle of the emergency room right behind where the doctors all sit," instead of in the behavioral-health area. During the shift, other nurses ignored her and one nurse "roll[ed] her eyes at [Pearson]." On May 28, Pearson sent a letter expressing her intent to end her employment at the emergency trauma center and to seek similar positions elsewhere within CentraCare.

During summer 2020, after filing a workers' compensation claim, Pearson worked with a rehabilitation consultant from the Minnesota Department of Labor and Industry to help her return to work as a nurse. CentraCare also worked with Pearson to find her another position within CentraCare, including identifying a registered-nurse position at a facility

4

in Monticello in June 2020.  Instead, Pearson accepted a position outside of CentraCare in October 2020.  Then, in March 2021, Pearson and CentraCare entered into a stipulated settlement of Pearson's workers' compensation claim related to alleged psychological injuries sustained on or about March 2, 2020, in the course of employment.

*District Court Proceedings*

Pearson served EPPA with a summons and complaint on August 10, 2021, and CentraCare on August 18, 2021, and filed an amended complaint in February 2022. Pearson's amended complaint alleged two counts of employment discrimination under the MHRA; two counts of violations of the MWA; and negligent hiring, supervision, and retention.  The amended complaint alleged that one EPPA physician sexually harassed her. The amended complaint also alleged that Pearson suffered retaliation by CentraCare nurses and EPPA physicians after she reported that an EPPA physician sexually harassed her and that CentraCare nurses were prescribing medication without a physician's order.  The amended complaint alleged that Pearson "had severe anxiety and panic attacks resulting in a diagnosis of Post-Traumatic Stress Disorder (PTSD)."

CentraCare and EPPA each filed motions for summary judgment, which Pearson opposed.  Pearson also filed motions to compel discovery against EPPA and CentraCare, which both opposed.

The district court denied Pearson's motion to compel discovery from CentraCare and denied in part and reserved in part Pearson's motion to compel discovery from EPPA. The district court subsequently granted CentraCare's and EPPA's motions for summary judgment and dismissed the amended complaint.

5

Pearson appeals.

## DECISION

Pearson argues that the district court erred by granting CentraCare's and EPPA's motions for summary judgment and dismissing her MHRA claims, MWA claims, and claims for negligent hiring, supervision, and retention. She also argues that the district court erred by denying her motions to compel. We first address Pearson's arguments regarding the summary-judgment dismissal of her claims and then discuss her arguments regarding the motions to compel.

## I. The district court did not err by granting CentraCare's and EPPA's motions for summary judgment.

"We review a district court's summary judgment decision de novo." *Henry v. Indep. Sch. Dist. No. 625*, 988 N.W.2d 868, 880 (Minn. 2023). "We will affirm a grant of summary judgment if no genuine issues of material fact exist and if the [district] court accurately applied the law." *Hanson v. Dep't of Nat. Res.*, 972 N.W.2d 362, 371-72 (Minn. 2022). Furthermore, "we may affirm a grant of summary judgment if it can be sustained on any grounds." *Doe v. Archdiocese of St. Paul*, 817 N.W.2d 150, 163 (Minn. 2012).

"In determining whether there are genuine issues of material fact, we view the evidence in the light most favorable to the nonmoving party and resolve all doubts and factual inferences against the moving parties." *Hanson*, 972 N.W.2d at 372 (quotation omitted). To survive summary judgment, the nonmoving party must present specific, admissible evidence that demonstrates a genuine issue of material fact. *Doe*, 817 N.W.2d at 163. "A genuine issue of material fact exists when there is sufficient evidence regarding

6

an essential element to permit reasonable persons to draw different conclusions." *St. Paul Park Refin. Co. v. Domeier*, 950 N.W.2d 547, 549 (Minn. 2020) (quotation omitted). Accordingly, "the nonmoving party must do more than rely on unverified or conclusionary allegations in the pleadings or postulate evidence which might be produced at trial." *W.J.L. v. Bugge*, 573 N.W.2d 677, 680 (Minn. 1998) (quotation omitted).

For each of the claims, the district court determined that Pearson failed to establish a genuine issue of material fact and that judgment as a matter of law was proper. We consider in turn Pearson's claims under the MHRA, her claims under the MWA, and her claims for negligent hiring, supervision, and retention.

### A. The district court did not err by granting summary judgment on Pearson's MHRA claims.

We first address Pearson's two MHRA claims, which alleged that CentraCare and EPPA engaged in sex discrimination and improperly handled her report of sexual harassment.

The MHRA prohibits, as relevant to Pearson's claims, unfair discriminatory practices related to employment. *See* Minn. Stat. § 363A.08 (Supp. 2023).[2] But the MHRA imposes a one-year statute of limitations to bring such claims. *See* Minn. Stat. § 363A.28, subd. 3(a) (2022) ("A claim of an unfair discriminatory practice must be

---

[2] The MHRA was amended in 2023. 2023 Minn. Laws ch. 52, art. 19, §§ 45-72, at 1149-62. Previous versions of the MHRA were in effect during the underlying events and when the district court granted respondents' motions for summary judgment. The amendments do not change the substance of the section applicable to Pearson's claims. We therefore cite the current version of the MHRA. *See Interstate Power Co. v. Nobles Cnty. Bd. of Comm'rs*, 617 N.W.2d 566, 575 (Minn. 2000) (recognizing "general rule . . . that appellate courts apply the law as it exists at the time they rule on a case").

brought as a civil action . . . within one year after the occurrence of the practice."). The district court determined that Pearson's MHRA claims were time-barred because she failed to identify discriminatory acts or occurrences within that one-year statute-of-limitations period. Pearson contends that there are genuine issues of material fact about whether she continued to be subjected to discrimination by respondents during the statute-of-limitations period and therefore whether her MHRA claims are timely under the continuing-violations doctrine. We are unpersuaded.

"Under Minnesota law, each individual discriminatory act which is part of a continuing violation triggers anew the time period for reporting the entire pattern of discrimination, as long as at least one incident of discrimination occurred within the limitations period." *Abel v. Abbott Nw. Hosp.*, 947 N.W.2d 58, 70 (Minn. 2020) (quotations omitted). "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Sigurdson v. Isanti County*, 448 N.W.2d 62, 67 (Minn. 1989) (quotation omitted). "The critical question is whether any present *violation* exists within the statute of limitations period." *Abel*, 947 N.W.2d at 71 (quotation omitted).

Pearson concedes that, in order for her MHRA claims to survive, she must identify evidence of discrimination between August 2020 and August 2021. The statute-of-limitations period runs from August 2020 to August 2021 because Pearson served respondents with her complaint in August 2021. *See* Minn. Stat. § 363A.28, subd. 3; *see also Abel*, 947 N.W.2d at 68-69. And Pearson also does not dispute: (1) that Dr. S's alleged harassment occurred well before August 2020, or (2) that she last worked in the

St. Cloud Hospital emergency trauma center in May 2020. Instead, Pearson argues that respondents continued to discriminate against her by offering her "alternative work positions" that were "low skilled" or "directly conflicted with her children's school schedules and would cause her to have to interact with the" emergency trauma center.

Even if we assume that these alternative job offers qualified as discrimination within the scope of section 363A.08, Pearson does not identify any evidence of such offers between August 2020 and August 2021 to support her continuing-violation theory. The sole record evidence related to job offers is from June 2020, two months too early to fall within the statute-of-limitations period. Absent any evidence of allegedly discriminatory acts during the statute-of-limitations period, there is no genuine dispute of material fact that Pearson's MHRA claims were time-barred. *See Doe*, 817 N.W.2d at 163. We therefore affirm the grant of summary judgment on those claims.[3]

---

[3] Pearson's amended complaint alleged two counts under section 363A.08: (1) "violation of Minn. Stat. § 363A.08, based on sex discrimination," and (2) "violation of Minn. Stat. § 363A.08, based on invasion of privacy and intentional infliction of emotional distress." In granting summary judgment, the district court construed the second count as a claim for intentional infliction of emotional distress, rather than an MHRA claim. At oral argument, Pearson conceded that both claims were brought under the MHRA and subject to its statute of limitations. We also note that, even if the complaint alleged an intentional-infliction-of-emotional-distress claim, Pearson does not identify the "egregious" conduct required to sustain an intentional-infliction-of-emotional-distress claim. *See Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 864-65 (Minn. 2003) ("We have cautioned that intentional infliction of emotional distress is sharply limited to cases involving particularly egregious facts and that a high threshold standard of proof is required to submit the claim to a jury." (quotations omitted)); *see also Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 439 (Minn. 1983) ("[E]xtreme and outrageous [conduct] must be so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." (quotations omitted)).

**B.    The district court did not err by granting summary judgment on Pearson's MWA claims.**

We next address Pearson's two whistleblower claims, which alleged that EPPA and CentraCare employees retaliated against her for reporting sexual harassment and other improper conduct.

The MWA prohibits an employer from retaliating against an employee who, "in good faith, reports a violation, suspected violation, or planned violation of any federal or state law." Minn. Stat. § 181.932, subd. 1(1) (2018);[4] *see also Hanson*, 972 N.W.2d at 372 ("In short, the statute makes it illegal for an employer to punish an employee for reporting violations of law in good faith."). Pearson concedes that, to survive summary judgment, she must provide evidence of an "adverse employment action" against her in retaliation for conduct protected by the MWA. *See Moore v. City of New Brighton*, 932 N.W.2d 317, 323 (Minn. App. 2019), *rev. denied* (Minn. Oct. 15, 2019). The district court determined that there was no evidence that Pearson suffered an adverse employment action, and therefore Pearson's whistleblower claims failed. Pearson contends that the district court erred because Pearson presented evidence of an adverse employment action—namely, a "constructive discharge" by CentraCare.[5] We are not persuaded.

---

[4] The MWA was amended in 2023 with respect to the actions prohibited. 2023 Minn. Laws ch. 53, art. 11, § 26, at 1290-91. We therefore cite the version in effect at the time of CentraCare's alleged conduct.

[5] To the extent that Pearson challenges the dismissal of her whistleblower claims against EPPA, we conclude that summary judgment is appropriate. The MWA provides that "[a]n *employer* shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee." Minn. Stat. § 181.932, subd. 1 (emphasis added); *see also* Minn. Stat. § 181.935(a) (2018) ("[A]n employee injured by a violation of section 181.932 may

At the outset, we note that neither this court nor the supreme court has applied the constructive-discharge doctrine—a doctrine typically applied in cases arising under the MHRA or Title VII—to a whistleblower claim. *See Henry*, 988 N.W.2d at 884 ("[A] plaintiff can satisfy the adverse employment action element of a disparate treatment claim under the [MHRA] by demonstrating constructive discharge."); *see also Coursolle v. EMC Ins. Grp., Inc.*, 794 N.W.2d 652, 662 (Minn. App. 2011) ("Neither the supreme court nor this court has applied the constructive discharge doctrine to a whistleblower claim."), *rev. denied* (Minn. Apr. 19, 2011). Nonetheless, assuming without deciding that a constructive discharge can constitute an "adverse employment action" for the purpose of a whistleblower claim, we conclude that summary judgment is still appropriate.

A "constructive discharge arises when the working conditions are so intolerable that a *reasonable person* would have felt compelled to resign." *Henry*, 988 N.W.2d at 885 (quotation omitted). A person alleging constructive discharge must allege: "(1) objectively intolerable working conditions that are (2) created by the employer with the intention of forcing the employee to quit." *Id.* To satisfy the first prong, a plaintiff must show either "harassment [that] was so severe or pervasive that a reasonable person would have felt compelled to resign" or that "an employer act[ed] in a manner so as to have communicated to a reasonable employee that she will be terminated." *Id.* at 886. To satisfy

---

bring a civil action . . . ."). The undisputed evidence shows that Pearson's employer was CentraCare, not EPPA. Neither Pearson, nor our independent research, has identified authority suggesting that Pearson can assert a claim under the MWA against a nonemployer. We therefore affirm the summary-judgment dismissal of Pearson's whistleblower claims against EPPA on that basis. *See Doe*, 817 N.W.2d at 163.

the second prong, the plaintiff must show that "the employer deliberately created intolerable working conditions with the intent of forcing the employee to quit" or that "resignation was a reasonably foreseeable consequence of the employer's deliberate actions." *Id.* at 887.

Pearson asserts that she was constructively discharged by "the hostile work environment that had been caused by [CentraCare's] handling of the report of sexual harassment" and by CentraCare's offers of "alternative positions that . . . were neither realistic nor in line with [Pearson's] certifications or experience." While we acknowledge that Pearson has presented evidence of her own subjective emotional distress resulting from her work environment, the standard for demonstrating a constructive discharge is an objective one. Based on that standard, we conclude that a reasonable jury could not find that the evidence constitutes "objectively intolerable working conditions," as required to meet the first prong. *See id.* at 885. In other words, viewing the evidence in the light most favorable to Pearson as the nonmoving party, the alleged harassing behaviors—being confronted by Dr. B and rude or cold interactions by other nurses—do not rise to the level of "harassment ratcheted up to the breaking point" required for a hostile-work-environment constructive discharge. *See id.* (quotation omitted). Likewise, Pearson has not established a genuine dispute of material fact that CentraCare's offers "communicated to a reasonable employee that she will be terminated." *See id.* at 887. The sole offer in the record is for a medical-surgical registered-nurse position at CentraCare's Monticello facility, and Pearson does not identify evidence that this job offer was unrealistic or below her qualifications.

Furthermore, even if we assume that a genuine issue of material fact exists regarding the first prong, there is no evidence suggesting that CentraCare intended to force Pearson to quit, as required by the second prong. Instead, the record suggests that CentraCare wanted to retain Pearson as a nurse after she reported the sexual harassment. As a result, there is no genuine dispute of material fact that Pearson was constructively discharged, and the district court did not err in granting summary judgment on these claims.

C. **The district court did not err by granting summary judgment on Pearson's claims for negligent hiring, supervision, and retention.**

Finally, we turn to Pearson's claims for negligent hiring, supervision, and retention, which allege that EPPA placed certain physicians at St. Cloud Hospital whom EPPA knew or had reason to know had substance-abuse issues and had previously sexually harassed nurses.

"Minnesota recognizes three causes of action where a claimant sues an employer in negligence for injuries caused by one of its employees: negligent hiring, negligent retention, and negligent supervision." *M.L. v. Magnuson*, 531 N.W.2d 849, 856 (Minn. App. 1995), *rev. denied* (Minn. July 20, 1995). As relevant to this appeal, a viable claim for negligent hiring, supervision, or retention requires the plaintiff to suffer physical injury or threat of physical injury. *Johnson v. Peterson*, 734 N.W.2d 275, 278 (Minn. App. 2007) (negligent hiring and supervision); *Bruchas v. Preventive Care, Inc.*, 553 N.W.2d 440, 443 (Minn. App. 1996) (negligent retention and supervision). The district court determined that Pearson did not identify evidence of physical injury or threat of physical injury. Pearson argues that the district court erred because the manifestation of hives following an

13

interaction with Dr. B—which she acknowledges was "because of her PTSD"—qualifies as a physical injury. We are not persuaded.

To support her argument, Pearson relies on *Garvis v. Employers Mutual Casualty Co.*, 497 N.W.2d 254 (Minn. 1993). In *Garvis*, the supreme court considered the definition of "bodily injury" as used in an insurance policy and "conclude[d] that emotional distress with appreciable physical manifestations can qualify as a 'bodily injury' within the meaning of the insurance policy." 497 N.W.2d at 257. But *Garvis* did not consider what constitutes a physical injury for purposes of a common-law negligence claim. *See id.* at 256-58. In the context of claims for negligent hiring, retention, and supervision, this court has rejected the argument that emotional distress resulting in physical symptoms qualifies as a "physical injury" and instead underscored that "emotional distress is not a physical injury" for such claims. *Johnson*, 734 N.W.2d at 278 (affirming rule 12 dismissal of negligent-hiring and negligent-supervision claims alleging "emotional distress that may have caused heart problems and anxiety disorders"). Thus, Pearson's emotional distress, regardless of its severity and physical symptoms, does not qualify as physical injury under existing precedent for the purpose of a negligent-hiring, negligent-supervision, or negligent-retention claim. *See id.* We therefore conclude that the district court properly granted summary judgment on Pearson's negligence claims.

In sum, Pearson has not presented evidence to demonstrate a genuine dispute of material fact regarding the viability of her MHRA claims, her MWA claims, or her negligence claims. Thus, the district court did not err in granting summary judgment in favor of CentraCare and EPPA.

14

**II.** **Any error related to Pearson's motions to compel discovery from CentraCare and EPPA is harmless.**

In addition to her challenges to the summary-judgment dismissal of her claims, Pearson argues that the district court abused its discretion by denying her motion to compel discovery from CentraCare and by denying in part and reserving in part her motion to compel discovery from EPPA. We conclude that, even assuming the district court erred with respect to either motion, Pearson is not entitled to relief.

Pearson does not articulate how the requested discovery would preclude summary judgment on her claims against CentraCare or EPPA. And based on our review of Pearson's motions to compel, the record, and our grounds for affirming the grant of summary judgment, we conclude that the relevant information for each claim is within Pearson's personal knowledge. Thus, under the circumstances, the requested discovery would not give rise to a genuine dispute of material fact with respect to any of Pearson's claims. As a result, the district court's decisions on Pearson's discovery motions do not provide a basis to disturb the grant of summary judgment in favor of respondents. *See* Minn. R. Civ. P. 61 (requiring harmless error to be ignored); *see, e.g.*, *Kahn v. Tronnier*, 547 N.W.2d 425, 431 (Minn. App. 1996) (declining to address merits of the district court's denial of a motion to compel because, even "if the [district] court's refusal to require father to produce the financial information was an error, that error was harmless"), *rev. denied* (Minn. July 10, 1996).

**Affirmed.**