TENNESSEE CORPORATION, Plaintiff,

v.

HARTFORD ACCIDENT AND INDEM-
NITY COMPANY, Defendant.

Civ. A. No. 12698.

United States District Court,
N. D. Georgia,
Atlanta Division.

April 30, 1971.

Hamilton Lokey, Edwin L. Sterne, Atlanta, Ga., for plaintiff.

Hurt, Hill & Richardson, Atlanta, Ga., for defendant.

## OPINION

MOYE, District Judge.

This is a suit upon an insurance policy or policies issued by defendant to plaintiff wherein defendant undertook to pay sums which the plaintiff insured might be required to pay by reason of its legal obligation for bodily injury, sickness, or disease, including death, and for damages due to injury to or destruction of, property, caused by accident, and to defend suits alleging such injury or damage. This suit involves defendant's refusal to defend a lawsuit brought against plaintiff by the City of East Point, Georgia, with respect to certain alleged property damage, or to reimburse plaintiff the amounts expended by plaintiff in executing a settlement of that litigation.

This case was tried without a jury on January 27 and January 28, 1971.

The plaintiff is a Delaware corporation which, at all times pertinent to this case, operated a plant located in East Point, Fulton County, Georgia, for the manufacturer of fertilizer and related products.

The defendant is a Connecticut insurance corporation, doing business in Georgia.

The matter in controversy exceeds the sum of $10,000, and the Court has jurisdiction of this litigation under Title 28 § 1332 U.S.C.

The plaintiff purchased from the defendant four successive comprehensive general liability insurance policies together covering the period from July 1, 1961 to January 1, 1966. Each of the policies contained the following insuring clause:

"Coverage D—Property Damage Liability—Except Automobile: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

Each policy also contained the following provision:

"With respect to such insurance as is afforded by this policy, the company shall * * * defend any suit against the insured alleging such injury * * * or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent."

Each policy also specified and declared that the business of the named insured, the plaintiff, is "fertilizer manufacturing."

All premiums required by said policies were paid and said policies were in full force and effect during the period from July 1, 1961, to January 1, 1966.

On or about March 17, 1967, a complaint was filed in this Court by the City of East Point against the plaintiff and also Allied Chemical Corporation, as defendants, seeking damages in the sum of $175,000. The complaint alleged that in 1963 the City of East Point constructed a drainage system into which the plaintiff emptied its waste products. The complaint further alleged that because of the continuous discharge by plaintiff of acids, sulphates, and other waste products into that drainage system, the metal pipes of said system were corroded and undermined, and in July, 1965, portions of one of the streets above said system collapsed.

Upon receipt of the complaint in the lawsuit above identified, plaintiff called upon defendant to defend the said action on its behalf and assume any liability of the plaintiff by reason thereof, but by letter of March 31, 1967, the defendant denied coverage under its policies and declined to "assume any defense or handling of the case."

Plaintiff thereupon undertook, through its own attorneys, the defense of said suit. In the preparation of that defense, plaintiff's counsel employed various experts and undertook to establish that the principal cause of the damage to the City of East Point's drainage

system, and the collapse of its street, was the faulty construction of such drainage system, rather than the discharge into it of the waste products generated by the plaintiff's manufacturing operations. The case ultimately was settled by the payment to the City of East Point of $30,000 of which plaintiff contributed $20,000.

In connection with the defense and settlement of the action brought by the City of East Point, plaintiff incurred expenses in the amount of $13,095.27, of which $5,095.27 was paid to various engineers, court reporters, and for miscellaneous expenses including court costs, the remainder being paid to attorneys employed by the plaintiff.

The parties have stipulated, and the Court finds, that the above expenditures were reasonable and necessarily incurred by the plaintiff in the defense and disposition of the suit brought against it by the City of East Point. However, the defendant has not, by entering into such stipulation, acknowledged any liability to the plaintiff in connection with the above settlement and expenses incurred in connection therewith.

Thereafter, plaintiff filed this suit seeking to recover the principal sum of $33,095.27 ($20,000 settlement; $13,095.-27 expenses) expended by it in the defense and disposition of the suit brought by the City of East Point. Pursuant to the provisions of Georgia Code § 56–1206, 60 days prior to the filing of the complaint in this action, plaintiff made demand upon defendant for the payment of the above sums, and sues in this action for an additional sum equal to 25 percent of the principal sum sued for, together with reasonable attorney's fees for the prosecution of this action.

In its answer, the defendant admits that it was called upon to defend, upon behalf of the plaintiff, the suit brought by the City of East Point, but denies that it had any obligation to defend that action or assume any liability in connection therewith, claiming that there was no coverage afforded by it to the plain-tiff against the claim of the City of East Point.

The evidence is undisputed that prior to the construction of Norman Berry Drive (a street in the City of East Point, portions of which collapsed as set forth above), and the drainage system thereunder, the area in question was uninhabited woods through which flowed a stream known as South River. Prior to the acquisition of the land in question by the City of East Point, under threat of condemnation, around 1959 or 1960, that land was owned by plaintiff. In the course of its manufacturing operations and for a period of more than 40 years prior to 1961, plaintiff, along with other manufacturing concerns in the area, allowed its waste products to drain into South River, and there is no evidence of record to suggest that, on the average, the effluents discharged by plaintiff into South River subsequent to 1961 were more or less acid or alkaline than during the previous 40 years except for the fact that, by reason of one or more incidents involving the discharge of such effluents, and inspections by appropriate health officials, the plaintiff may have made somewhat more diligent efforts to neutralize the effluents subsequent to June 1962 when it was brought to the plaintiff's attention that a small child had become ill by reason of eating a plum which he had washed in one of the settling lagoons maintained by plaintiff.

There was testimony that the Georgia Department of Public Health considered a pH factor of between 5 and 9 satisfactory (a pH factor of 7 is neutral), and the plaintiff apparently attempted to keep the pH factor of its effluent within these extremes. While plaintiff's system for treating its acid effluents, as described in the record, was extremely crude and ineffective, even after the incident described above was brought to its attention and after other proddings by health officials, there was some testimony that the system conformed to prevalent industry practice, and, in any event, as will be set forth in detail below, it does not appear that the dis-

charge by plaintiff of its effluents with an impermissibly high acidity factor had any causative relationship to the damage to the culvert and street of the City of East Point.

In this connection, Mr. A. O. White, a qualified consulting engineer retained by plaintiff for the purpose of its litigation with the City of East Point, testified that "peculiarly enough, the most corrosive material that you can have for the metal of which this type sewer is composed is slightly acid or slightly alkaline, not extremely acid or extremely alkaline." He further testified that "If the pH factor had been exactly 7 [neutral], you would have had much less corrosion than we saw, and, along with that, probably much less erosion. * * * A slight variation. It doesn't take much difference. From 7.1 to 6.9, then you'd have had *just exactly what we saw.*" (Emphasis added.) Mr. White pointed out that domestic sewage is acid with a pH factor of about 6.8—detergent is alkaline, having a pH factor of from 7.2 to 7.3,—and "The average mix going into our sewage treatment plants will run about 6.8." Mr. White concluded that the cause of the damage to the sewer and street of the City of East Point was the negligent construction by the City of East Point of its storm sewer system under Norman Berry Drive.

As pointed out in the testimony of Mr. White, the storm sewer had an asphalt coating on the inside for the purpose of preventing the corrosion of the actual metal of the culvert by acid or alkaline matters flowing through the culvert, and, therefore, it was clearly contemplated that such effluents as were discharged by plaintiff would flow through said sewer; the damage occurred, as set out in the testimony of Mr. White, because of the inadequate foundations for the said culvert, which permitted the cracking of the inside asphalt coating and the sloughing off of the coating, thereby permitting effluent to corrode the metal of the culvert and to seep from the inside to the outside of the culvert and undermine it.

Therefore, the Court finds that defendant had no obligation to plaintiff under Coverage D under the insurance policies involved, "to pay on behalf of the insured all sums the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident" because the plaintiff was under no legal obligation to pay the City of East Point any sums as damages by reason of the damage to the sewer and street of the City of East Point.

As noted above, the $20,000 paid by plaintiff to the City of East Point was by way of settlement, rather than judgment. The defendant's obligation to pay on behalf of its insured an amount agreed upon in settlement cannot be any greater than its obligation to pay legally determined damages as embodied in a judgment. It may have no obligation to pay an agreed-upon settlement. For the purposes of this opinion, however, the Court has equated the agreed-upon settlement with a legal obligation as would be expressed in a judgment and has not considered the question of the voluntariness of the settlement.

We next turn to the question of the defendant's obligation to defend.

The complaint of the City of East Point did not allege, explicitly or inferentially, that the damages to its sewer and street were "caused by accident". To the contrary, it alleged:

"The defendants [including plaintiff herein] are now, and have been for the past several years, continuously discharging acids, sulphates, and other toxic chemicals and waste products from their manufacturing plants into the South River, thereby causing extensive damage to plaintiff's storm drainage system * * * *"

* * * * * *

"The continuous discharge of acids, sulphates, and other waste products

from the plants of defendants herein has polluted South River and has caused the invert of pipe A to be completely corroded away in several places, which, in turn, has caused the storm water and material flow of South River to undermine Pipes A and B and cause the ultimate collapse of portions of Norman Berry drive * * * " (Exhibit E to Complaint herein.)

The Court concludes therefore that the complaint of the City of East Point did not allege as facts which would bring the complaint within the coverage afforded by defendant's insurance policy, or policies, i. e., damages "caused by accident" for which plaintiff would have a legal obligation.

■ But, as pointed out at page 3 of defendant's brief herein, the fact that the complaint in question does not assert facts coming within insurance policy coverage does conclude the insurance determination of whether it has an obligation to defend. The insuror must look past the facts as alleged in the claimant's complaint, and ascertain what are the real facts; and defend or not on the basis of those real facts.

On June 9, 1969, defendant served the following interrogatories upon the plaintiff:

"In Paragraph Ten (10) of plaintiff's complaint, plaintiff alleges that plaintiff had coverage by reason of insurance with defendant because of the 'true facts' upon which the claim was based in the case of the City of East Point v. Tennessee Corporation and Allied Chemical Corporation, Civil Action No. 10812 in the United States District Court for the Northern District of Georgia, Atlanta Division. Please state, specifically and in detail, what the 'true facts' of the said claim were."

The plaintiff's verified answer of June 16, 1967, asserted:

"The true facts are that the damage to the public storm drain system of the City of East Point and the other damage complained of in the petition filed by the City of East Point against the Tennessee Corporation and allied Chemical was caused by the faulty engineering and construction of such storm drainage system and was not caused by the discharge of acids, sulphates or other waste products from the plants of the defendants."

Therefore, the true facts of the matter, as would have been revealed to the defendant upon investigation (and the defendant did in fact make such an investigation) were that the damages to the plaintiff's storm sewer system and street were not caused by any accident for which the plaintiff might have had a legal responsibility to the City of East Point. Before the defendant's Coverage D can be invoked, there must be a conjunction of three elements: (1) damages, (2) caused by accident, and (3) liability therefor on the part of the insured, revealed either by the allegations of the complaint or by the required investigation into the true facts.

■ In other words, if the complaint alleges facts, even though groundless, false or fraudulent, bringing the litigation within the coverage provisions of the policy, a defense must be provided; but if the coverage elements do not appear from the complaint, and if the investigation into the "true facts" reveals that a suit alleging the necessary coverage elements would be groundless, false or fraudulent, no defense is required because the duty of defense is only with respect to "such insurance as is afforded by this policy." While the negligent construction of the storm sewer and its subsequent failure might have been an "accident" as that term is used in defendant's insurance policy, it was not one for which plaintiff would have been liable. Therefore, the Court holds that the defendant did not have an obligation to defend plaintiff in the City of East Point case. (In view of this finding, there is no need to discuss separately the fact that the City of East Point complaint sought in substantial part injunctive relief with respect to which

there would, in any event, be no duty to defend—the defendant's insurance policy relating only to claims involving damages, nor is there any need to discuss plaintiff's claim for punitive damages and attorney's fees.)

Having no obligation to defend, nor an obligation to pay, let judgment be entered in favor of the defendant and against the plaintiff.