TENNESSEE CORPORATION,
Plaintiff-Appellant,

v.

HARTFORD ACCIDENT AND INDEM-
NITY COMPANY, Defendant-
Appellee.

No. 71-2684.

United States Court of Appeals,
Fifth Circuit.

July 21, 1972.

Rehearing Denied Sept. 18, 1972.

Hamilton Lokey, Glenn Frick, Atlanta, Ga., for plaintiff-appellant.

James C. Hill, Robert Todd, Atlanta, Ga., for defendant-appellee.

Before GEWIN, COLEMAN and IN-GRAHAM, Circuit Judges.

COLEMAN, Circuit Judge:

Tennessee Corporation appeals a judgment of the United States District Court dismissing its action against Hartford Accident and Indemnity Corporation, seeking the recovery of expenses incurred by Tennessee in the defense and disposition of a suit brought by the City of East Point, Georgia, against Tennessee and Allied Chemical Corporation for damages allegedly done to certain drainage systems and streets in the City.

■ The decision of the District Court is reported, Tennessee Corporation v. Hartford Accident and Indemnity Company, 326 F.Supp. 520 (N.D., Ga., 1971).

We affirm.

### I

Between July 1, 1961 and January 1, 1966, Tennessee purchased four successive comprehensive general liability insurance policies from Hartford.

The following facts about each of the policies are stipulated:

(1) All premiums required by said policies were paid and the policies were in full force and effect during the period from July 1, 1961 to January 1, 1966.

(2) Each policy specified and declared that the business of the named insured, Tennessee, was "fertilizer manufacturing".

(3) Each of the policies contained the following insuring clause:

> "Coverage D—Property Damage Liability—
>
> "Except automobile: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss thereof, *caused by accident.* [Emphasis added]."

(4) Each policy also contained the following provision:

> "With respect to such insurance as is afforded by this policy, the company shall . . . defend any suit against the insured alleging such injury . . . or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent."

(5) Except as to assault and battery, the policies contained *no* definition of "accident".

(6) Each policy contained *an endorsement* relative to "Coverage B—Bodily Injury Liability—Except Automobile". The endorsement used the words "resulting from an occurrence" rather than the words "caused by accident" (in Coverage B). The word "occurrence" was defined as "an *accident* which occurs during the policy period or a continuous or repeated exposure to accidentally caused conditions which result during the policy period in bodily injury, sickness, or disease". The endorsement further provided that nothing contained therein shall be held to vary, waive, alter or extend the terms and conditions of the policy except as to Coverage B.

Thus, as to property losses, the coverage was for losses "caused by accident" —and accident was not defined. As to bodily injury, the coverage, BY ENDORSEMENT, was for "resulting from an occurrence". An occurrence was defined in specific terms to include an accident or "a continuous or repeated exposure to accidentally caused conditions".

### II

About March 17, 1967, a complaint was filed in the District Court for the Northern District of Georgia by the City of East Point, suing Tennessee and Allied Chemical Corporation for damages in the sum of $175,000. The complaint alleged that in 1963 the City of East Point constructed a drainage system. Into that system the defendants emptied the waste products formed by production at their plants. It was further alleged that because of the continuous discharge of acids, sulphates, and other waste products into that drainage system the metal pipes of the system were corroded and undermined, resulting

in the collapse in July, 1965, of portions of one of public streets situated above the system.

Upon receipt of the complaint, Tennessee tendered the defense of the suit to Hartford, contending it had coverage under certain of Hartford's insurance policies. Contending that its coverage as to property damage was limited to that "caused by accident" and consequently the East Point action was not within the coverage of its policies of insurance Hartford declined to undertake the defense of the lawsuit.

Through its own attorneys, Tennessee thereupon assumed the defense of that action. In the preparation of its defense, Tennessee's counsel employed various experts and attempted to establish that the damage to the City of East Point's drainage system, including the collapse of its street, was caused by the faulty construction of the drainage system, not from the discharge into it of the waste products generated by Tennessee's and Allied Chemical's manufacturing operations.

The case was ultimately settled by the payment by Allied Chemical and Tennessee of $30,000 to the City of East Point. Of that sum, Tennessee contributed $20,000.

In connection with the defense and settlement of the action brought by the City of East Point, Tennessee incurred expenses in the sum of $13,095.27, of which $5,095.27 was paid to various engineers, court reporters, and for miscellaneous expenses including court costs. The remainder was paid to attorneys. Therefore, a grand total of $33,095.27 was expended by Tennessee in the settlement of the East Point lawsuit.

## III

On May 6, 1969, Tennessee filed its complaint seeking recovery of the above-mentioned sum from Hartford.

Upon trial to the Court both parties stipulated that the alleged expenditures were reasonable and were necessarily incurred by Tennessee in the defense and disposition of the suit brought against it by the City of East Point. However, Hartford did not acknowledge liability under its policies in connection with the above settlement and expenses. It did agree that if there was coverage under the policies, then it was liable to Tennessee for $33,095.27.

After considering evidence, arguments and briefs, the trial court held Hartford did not have an obligation to defend Tennessee in the East Point case. It found that the property damage had come about as contended by Tennessee and not as contended by the City of East Point; that the facts presented no loss or liability covered by the insurance policies; that the claim asserted by the City of East Point was not a covered claim; and that an independent investigation into the facts relevant to the claim would not have revealed any unasserted facts upon which coverage might have been predicated, Tennessee Corporation v. Hartford Accident & Indemnity Company, 326 F.Supp. 520 (N.D., Ga., 1971).

On appeal, Tennessee contends that Hartford owed it both coverage and a defense. It argues that the word "accident" as used in Coverage D provided coverage for claims resulting from property damage caused by repetitive or continuous action over a period of time, regardless of whether that action was caused intentionally or accidentally.

## IV

We look first to the policy language: "With respect to such insurance as is afforded by this policy, the company shall . . . defend any suit against the insured alleging such injury . . . or destruction and seeking damages on account thereof, even if such suit is groundless, false, or fraudulent".

Under Georgia law, a liability insurer whose policy so obligates it is required to defend a suit against its insured when the complaint alleges facts bringing the claim within the coverage of the policy or where an independent

investigation into the "true facts" relevant to the claim would have placed the claim within the coverage of the policy, Loftin v. United States Fire Insurance Company, 106 Ga.App. 287, 127 S.E.2d 53 (1962); State Farm Mutual Insurance Company v. Keene, 111 Ga.App. 480, 142 S.E.2d 90 (Ga., 1965).

As pointed out by the court below, "if the complaint alleges facts, even though groundless, false, or fraudulent, bringing the litigation within the coverage provisions of the policy, a defense must be provided; but if the coverage elements do not appear from the complaint, and if the investigation into the 'true facts' reveals that a suit alleging the necessary coverage elements would be groundless, false, or fraudulent, no defense is required because the duty of defense is only with respect to 'such insurance as is afforded by the policy' ", Tennessee Corporation v. Hartford Accident & Indemnity Company, *supra*, at 524.

Therefore, the trial court was correct in finding that before Coverage D could be invoked, spawning Hartford's duty to defend, there must be a conjunction of two elements: (1) property damage, and (2) liability therefor on the part of the insured, revealed either by the allegations of the complaint or by the required investigation into the true facts surrounding the claim.

The District Court found that an independent investigation into the "true facts" surrounding the claim would have revealed that suit alleging the necessary coverage elements would have been groundless, false, or fraudulent and required no defense by Hartford. Tennessee does not challenge this finding.

We are therefore relegated to the allegations of the complaint.

It is undisputed that the complaint alleged that the property damage was caused by continuous and repetitive acts on the part of Tennessee.

Hence, as to this appeal we need only to decide whether the trial court fell into error when it held that the allegations were not within the property damage coverage of the policy, i. e., "caused by accident".

V

Under the law of Georgia, an insurance contract must in the final analysis, be construed so as to carry out the true intention of the parties. All other rules of contract interpretation and construction are subservient to that principle, St. Paul-Mercury Indemnity Company v. Rutland, 5 Cir., 1955, 225 F.2d 689; Sasser v. Coastal States Life Insurance Company, 113 Ga.App. 17, 147 S.E.2d 5 (1966).

Therefore, where it can be ascertained that it was the intention of the parties that liability should attach only in certain circumstances, coverage will be provided accordingly, Smith v. Life & Casualty Company of Tennessee, 185 Ga. 572, 196 S.E. 59 (1938).

In ascertaining the intention of the parties to an insurance policy, insurance contracts are governed by the same rules of interpretation as apply to other contracts, Golden v. National Life & Accident Insurance Company, 189 Ga. 79, 5 S.E.2d 198 (1939); Genone v. Citizens Insurance Company of New Jersey, 207 Ga. 83, 60 S.E.2d 125 (1950).

If the parties intended that liability *should not* attach under certain circumstances in the absence of an endorsement to the policy and that such circumstances did not constitute an "accident", the intention must control. And should those circumstances be the basis of a complaint, the insurer owes no duty to defend, regardless of whether Georgia law would independently hold that such circumstances constituted an "accident".

It has also been held that the meaning of a doubtful word or provision may be determined by reference to the meaning of words or provisions which are associated with it in the context of a written instrument.

In the construction of a written instrument it is firmly established that ordinarily the same word therein occur-

ring more than once is to be given the same meaning unless the context indicates that a different meaning was intended, Tudor v. American Employers Insurance Corporation, 121 Ga.App. 240, 173 S.E.2d 403 (1970). See, also, 13 Corpus Juris, p. 532, § 491.

It is conceded that *before the endorsement was added* to the policy, the word "accident" was used in both Coverage B (Bodily Injury) and Coverage D (Property Damage). Nothing in the context of the policy indicated that in the two provisions the word was used differently, or in an unrelated sense. However, the language as to *property damage* was not modified by an endorsement. The language as to *bodily injury* was modified. This constitutes the focal point in the case.

This is a diversity case. Ordinarily we would look first to Georgia law for a solution to the controversy. We find, however, that the courts of Georgia have not decided whether continuous or repetitive acts resulting in property damage are to be deemed as accidental.

This, we think, casts significant light on the intention of the parties when they entered into these insurance contracts.

█ The policies made no effort to define what constitutes an accident. If the parties had entertained little or no doubt that continuous or repetitive acts resulting in damage are to be deemed accidental under Georgia law they would have had no occasion to add an endorsement as to bodily injury so as specifically to include such occurrences within that coverage. The endorsement was considered necessary, it was added, and it cost an additional premium.

Thus it seems quite clear that had the parties intended *to issue* and *to obtain* the same coverage for property damage as for personal injuries there would have been an endorsement to that effect. As a matter of fact, the personal injury endorsement specifically stated that nothing in the endorsement should be held to vary, waive, alter or extend *the*

terms of the policy proper. Obviously, the parties intended that one standard should apply to bodily injury; another standard should apply to property damage. Continuous, repeated exposure to accidentally caused conditions were covered as to bodily injuries, but not as to property damage.

In the light of these considerations, the judgment of the District Court is

Affirmed.