**Terri Lynn SABINS, Personal Representative of the Estate of Gerald Allen Sabins, Deceased Plaintiff,**

v.

**COMMERCIAL UNION INSURANCE COMPANIES, Defendant.**

No. 99–CV–135–J.

United States District Court, D. Wyoming.

Feb. 7, 2000.

Joseph E. Darrah, Darrall & Darrall, Powell, Donald James Rissler, Central Wyoming Law Associates, Riverton, WY, for plaintiff.

George E. Powers, Jr., Sundahl Powers Kapp & Martin, John A Coppede, Rothgerber Johnson & Lyons, Cheyenne, Christopher M. Bechhold, Thompson Hine & Flory, Cincinnati, OH, for defendant.

## ORDER DENYING IN PART, AND GRANTING IN PART, COMMERCIAL UNION INSURANCE COMPANIES' MOTION FOR SUMMARY JUDGMENT

ALAN B. JOHNSON, Chief Judge.

This matter is before the court on defendant Commercial Union Insurance Companies' (Commercial Union) motion for summary judgment.

### ISSUES

1. Did Commercial Union Insurance Companies or Northern Assurance Company of America have a duty to defend Anthony Clark and Mark Hunter under an insurance policy issued to Beartooth Construction against a wrongful death action in Park County?

2. Is Commercial Union Insurance Companies entitled to judgment as a matter of law on plaintiff's claim for bad faith?

### FINDINGS OF FACT

1. The Defendant, Commercial Union Insurance Companies, is a liability insurance company incorporated in the State of Massachusetts and licensed to do business in the State of Wyoming. There is complete diversity of the parties to this case under 28 U.S.C. § 1332(a)(1) as there is diversity of citizenship between the plaintiff and the defendant, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff's complaint seeks judgment in an amount of $700,000. (Defendant's Notice of Removal at 2, Complaint at 1, Answer at 2)

2. On or about October 11, 1992, a commercial general liability insurance policy was issued to a partnership known as Beartooth Construction. (Defendant's Brief in Support of Motion for Summary Judgment, Exhibit 1)

3. The policy declarations show:

"Commercial Union Insurance Companies Boston, Massachusetts 02108 Issued by Northern Assurance Company of America"

4. The insurance policy provided:

The following coverages apply only when caused by an occurrence insured by this policy and not otherwise excluded:

1. Bodily Injury and Property Damage Liability

We cover all sums which the insured is legally required to pay as damages because of bodily injury or property damage.

3. Bodily Injury to Employees

Coverage does not apply:

   a. to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured for which the insured may be held liable as an employer or in any other capacity.

Defense

We have the right and duty to defend the insured against any claim or suit seeking damages payable under this policy, even if the charges of the suit are groundless, false or fraudulent. However, we have no duty to defend any suit for bodily injury, property damage, personal injury or advertising injury not covered by this policy. We may investigate and settle any claims as we see fit. After the policy limit of insurance has been used up by payment of judgements or settlements, we will not be obligated to defend any suit.

5. On May 28, 1993 Mr. Gerald Allen Sabins died while helping Anthony Clark, Mark Hunter and Mark Zentner unload sheet metal from a truck.

6. On June 4, 1993, Mr. Wayne Huff, an insurance adjuster for Commercial Union, interviewed Mr. Mark Hunter concerning Mr. Sabins' employment relationship with Beartooth Construction. (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, Exhibits 1.3, 3.3) Mr. Hunter stated that:

a. Mr. Sabins was a full time employee for Beartooth Construction. (*Id.* at 3)

b. Mr. Sabins "was our partner, he uh, like our comrade in arms, okay an', an', an' he felt like the company was his as much as ours, you know, I mean we, that's the way it was, you know." (Exhibit 1.3 at 6)

c. As to social security, "Um, we just take it out on personal, we, we, what we did is uh, we took out our, and Gerald did this too, was we took what we made through the company and just declared it as personal income tax, an' then took out our uh, income, er' social security an' stuff then." (*Id.* at 29)

d. "...[H]er he was, we considered him a partner ourselves, but there was nothin' on paper work that I could show her, [Wyoming Occupational Health and Safety Division investigator] she was wantin' me to show her that. Uh, believe me if I could show that he was I would, because I would, they would not be able to do anything to me if he was a partner, but I've got no way to, ta' do any of that. Uh, Gerald, it was, it was an agreement with us you know. Uh, it was, we all workin' at our own risk, an', an he realized that, that's how it was kinda." (*Id.* at 30)

7. On June 4, 1993, Mr. Wayne Huff interviewed Mr. Anthony Clark. Mr. Clark informed Mr. Huff that:

a. Beartooth Construction was a partnership, but that there's no contract in writing. (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, Exhibit 1.4 at 4)

b. "Gerald was a partner as far as...other than on paper work, we was just a partnership. His name was not on any paper work, cause he was have legal problems with an ex-wife." (*Id.* at 3)

c. Mr. Sabins was treated as a partner equally. (*Id.* at 4)

d. Mr. Sabins did not have check writing authority because of his ex-wife. (*Id.* at 4)

e. "Uh, we pretty much base our pay on $500.00 a week and that's what we pay each other....All three of us take the same....same basic draw and the we (inaudible) s[sic] up an account ta' fer our tax money (inaudible) which we would draw out equally to (inaudible)." (Id. at 6)

f. As to social security and worker's compensation, "Well that's uh, bein' a self employed, you're not required to carry workman's comp., so we don't, didn't carry workmans' compensation and social security and the medicare is uh, when you file your income tax at the end of the year, bein' self employed they g[sic] their share."

8. On July 21, 1993, Mr. Al Cope interviewed Mr. Clark, who stated:

a. As to whether Mr. Sabins was an employee or an independent contractor, "That's, he was a self-employed...it's hard to explain, there's three guys started the company and Gerald, cause of a ex-wife, his name could be put on no paperwork and uh, we formed Beartooth Construction

as an entity in which we could all work as independent contractors for, in order to be licensed and insured." (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, Exhibit 1.5 at 1, from Commercial Union claims file)

b. He stated that, "Yes, we all worked up the bids.... We all worked together.... No employees other than the three of us workin.' " (*Id.* at 3)

c. As to investment capital and whether all three put in equal shares, "Yeah, every nickel we could scrap [sic] up the last two years." (*Id.* at 8)

9. A report prepared by Jules Bell of the Wyoming Occupational Health and Safety Division on June 22, 1993 states that:

> On 05–30–93, when Bell was conducting interviews with Clark and Hunter, she was advised that Sabins was part owner of Beartooth Construction. Bell informed Clark and Hunter that she would need positive proof (something on paper) that Sabins was part owner. The investigation was put on hold.... On 06–09–93, Bell was advised by Clark and Hunter that Sabins was not part owner and he was an employee of Beartooth Construction. Bell then proceeded with the investigation.

(Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, Exhibit 1.6, at 3, from Commercial Union claim file)

10. On September 28, 1993, in a claim referral slip from Wil Mendez, claims examiner for Commercial Union, to Ms. Alaine Greger, home claims representative for Commercial Union, Mr. Mendez advised Ms. Greger that:

> I think that in the long run—the decedent will be deemed an employee rather than a partner.... If the decedent is deemed an employee, which in my opinion he is—then the matter should be deferred. I do not see anywhere in the

underwriting file or the Declaration page anything other than Beartooth Construction. No where are the names of the partners mentioned.

(Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, Exhibits 2.4, 3.1)

11. In a taped interview with Jules Bell of the Wyoming Occupational Health and Safety Division on May 30, 1993, Mr. Anthony Clark stated, "[Gerald] was a partner, an owner, we didn't consider him as an employee at all." (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, Exhibit 3.3.3) [1]

12. In a taped interview with Jules Bell of the Wyoming Occupational Health and Safety Division on May 30, 1993, Mr. Hunter explained:

> O.K., well, Gerald was a, he was a partner with us. The three of us were equal partners in the company. He did everything that I would do or Tony would do either one. We always kind of shared equally and changed jobs around as we did, whoever was doing that particular thing is what he did.
>
> Yes, he is [part owner in that you know he has this claimed on the income tax]. He is covered under our contract of liability insurance as being a full part owner and on our insurance what we would do is pay all of our expenses out of any money, out of our gross profits or gross money, we'd pay all of the expenses and then we would equally divide it amongst the three of us any profit.

(Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, Exhibit 3.3.4)

13. On June 16, 1995, Commercial Union wrote a letter to Mr. Hunter and Mr. Clark that Northern Assurance Company of America denied and disclaimed liability to defend or pay any judgment under the

---

1. The court is unable to determine if or when Commercial Union received the taped interviews. However, an October 22, 1993 invoice from Circle C Adjusters, Inc. indicates that the Wyoming Occupational Health and Safety Division charged Circle C Adjusters, Inc. for an "OSHA Report." (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, Exhibit 3.3.)

Beartooth Construction insurance policy based on the allegations in the complaint that Gerald A. Sabins was an employee of Beartooth Construction. (Defendant's Brief in Support of Motion for Summary Judgment at 4, and Exhibit 6)

14. On May 5, 1995, Terri Lynn Sabins filed a complaint for wrongful death against Mark Hunter, Anthony Clark, Zentner Trucking and Mark Zentner. The complaint alleged that:

    a. On or about May 28, 1993, the decedent Gerald Allen Sabins was employed by Beartooth Construction, a general contractor, principally doing business in Cody, Park County, Wyoming;

    b. Mark Hunter and Tony Clark were co-partners of Beartooth Construction; and

    c. The defendants failed (i) to adequately supervise, advise and direct safe unloading operations; (ii) to provide a safe work place and conditions; (iii) to maintain the equipment, including the slings, so that they would not be in a defective, or in an unreasonably dangerous, and/or extra hazardous condition; (iv) to properly train, advise and supervise the decedent; (v) to heed the obvious and specific warnings of the unsafe nature of the slings and working conditions by ordering the decedent Gerald Sabins to continue to assist the unloading operation and (vi) to properly warn and apprise decedent Gerald Sabins of the unreasonable dangerous conditions known by defendants.

15. Mr. Hunter and Mr. Clark entered into a Stipulation for Judgment with Terri Lynn Sabins. Mr. Clark and Mr. Hunter assigned their rights in the Commercial Union Insurance Companies and all causes of action they had against Commercial Union. A judgment was entered against each in the amount of $350,000. (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, Exhibits 5.7, 5.8 and 5.9)

## CONCLUSIONS OF LAW

The standard for the grant or denial of summary judgment is well known:

    [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. If the movant bears the burden of showing the absence of a genuine issue of material fact, the non-movant may not rest on its pleadings but must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.

*Mesa Oil, Inc. v. Ins. Co. of North America,* 123 F.3d 1333, 1336 (10th Cir.1997).

Commercial Union Insurance Companies, at the January 25, 2000 pretrial conference, disputed that it was a proper party defendant to this lawsuit. The parties are continuing discovery as to whether Commercial Union Insurance Companies or Northern Assurance Company of America, or both, are proper defendants to this action. Without determining whether either is a proper party, the court finds that Commercial Union Insurance Companies' motion for summary judgment should be denied on the issue of Commercial Union's duty to defend, and granted as to plaintiff's claim against Commercial Union Insurance Companies for bad faith.

Commercial Union Insurance Companies moves for summary judgment on the basis that Northern Assurance Company of America had no duty to defend Mr. Clark and Mr. Hunter because the allegations in the underlying lawsuit fell within the policy's exclusion for bodily injuries to employees, and that Commercial Union is entitled to judgment as a matter of law on Ms. Sabins' claim for bad faith.[2] (Defendant's Brief in Support of Motion for Summary Judgment at 2, 5, 8) Commercial

---

**2.** Defendant alleges that "Northern Assurance Company of America" is a sister company of "Commercial Union Insurance Company of America." (Defendant's Brief in Support of Motion for Summary Judgment at 2)

Union's first argument is based on the Wyoming Supreme Court's holding in *First Wyoming Bank, N.A., Jackson Hole v. Continental Ins. Co.*, 860 P.2d 1094, 1097 (Wyo.1993). In *First Wyoming Bank*, 860 P.2d at 1097, the court stated:

> Regarding the duty to defend, we have held that the duty of an insurer to defend a claim is broader than the duty of the insurer to indemnify. *Aetna Ins. Co. v. Lythgoe*, 618 P.2d 1057, 1061 (Wyo.1980) (citing *Lanoue v. Fireman's Fund American Ins. Cos.*, 278 N.W.2d 49 (Minn.1979); *Boston Ins. Co. v. Maddux Well Serv.*, 459 P.2d 777 (Wyo. 1967)). Analysis of the duty to defend is not made based on the ultimate liability of the insurer to indemnify the insured or on the basis of whether the underlying action is groundless or unsuccessful. *Lythgoe*, 618 P.2d at 1061 (citing *Employers' Fire Ins. Co. v. Beals*, 103 R.I. 623, 240 A.2d 397 (1968); *Burger v. Continental Nat'l American Group*, 32 Ohio Misc. 161, 441 F.2d 1293 (6th Cir.1971)). Instead, we analyze the duty to defend by examining the facts alleged in the complaint that the claim is based upon. *Lythgoe*, 618 P.2d at 1061 n. 2. See also *Garvis v. Employers Mut. Casualty Co.*, 497 N.W.2d 254, 258 (Minn.1993); *County of Columbia v. Continental Ins. Co.*, 189 A.D.2d 391, 595 N.Y.S.2d 988, 990 (1993).

Commercial Union also relies on the finding set forth in *Progressive Casualty Ins. Co. v. Brown's Crew Car of Wyoming, Inc.*, 27 F.Supp.2d 1288, 1294 (D.Wyo. 1998), that:

> The duty to defend, which is broader than the duty to indemnify, depends not upon whether coverage in fact is determined to exist, but whether the allegations in the complaints against UP create a "potential" for coverage under the Policy. *See First Wyoming Bank*, 860 P.2d at 1078. Under Wyoming law, a "potential" for coverage is determined solely from the allegations contained in the third party complaint.

The court finds that the defendant's reliance on the above two cases for the proposition that an insurer can ignore any information outside of the complaint to be unavailing. Neither *First Wyoming Bank* nor *Progressive Casualty Insurance* stand for that broad proposition. In fact, in *First Wyoming Bank* the Wyoming Supreme Court cites to *Garvis v. Employers Mut. Casualty Co.*, 497 N.W.2d 254 (Minn. 1993) to support its holding that the duty to defend is analyzed by examining the facts alleged in the complaint. *Garvis* specifically excepts the situation where an insurer is aware of facts indicating that the claim may fall within the coverage of the policy:

> Of course, if the insurer is aware of facts indicating that there may be a claim, either from what is said directly or inferentially in the complaint, or if the insured tells the insurer of such facts, or if the insurer has some independent knowledge of such facts, then the insurer must either accept tender of the defense or further investigate the potential claim. *Johnson v. AID Ins. Co. of Des Moines, Iowa*, 287 N.W.2d 663, 665 (Minn.1980).
>
> In this case, none of the facts alleged in plaintiff's complaint put the insurer on notice of a claim within the policy coverage. Twice Demuth tendered defense of the lawsuit to Employers Mutual but in neither letter tendering the defense was the insurer told that plaintiff was claiming her emotional distress had physical manifestations. Compare *Bituminous Cas. Corp. v. Travelers Ins. Co.*, 122 F.Supp. 197, 201 (D.Minn.1954), where the insured, in tendering defense to the insurer, informed the insurer of facts implicating coverage. (This case is quoted with approval in *Crum*, supra.)

*Garvis*, 497 N.W.2d at 258.

Likewise, the Wyoming Supreme Court in its earlier decision in *First Wyoming Bank, N.A., Jackson Hole, v. Continental Ins. Co.*, 860 P.2d 1064, 1073 (Wyo.1993), *vacated in part*, 860 P.2d 1094 (Wyo.1993),

articulated that, "The test of the duty to defend is generally determined by the pleadings in which a claim against the insured is made.... Normally, the four-corners rule applies to define whether the claimant has pleaded in the carrier to create its duty to defend." (bold added) In reaching this holding, the court relied on *Fitzpatrick v. American Honda Motor Co., Inc.,* 78 N.Y.2d 61, 571 N.Y.S.2d 672, 575 N.E.2d 90 (N.Y.1991). *Fitzpatrick* expressly rejects the notion that the complaint is the sole criteria for determining the duty to defend:

> This Court has repeatedly held that an insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy (*see, e.g., Technicon Elecs. Corp. v American Home Assur. Co.,* 74 N.Y.2d 66, 73, 544 N.Y.S.2d 531, 542 N.E.2d 1048; *Meyers & Sons Corp. v. Zurich Am. Ins. Group,* 74 N.Y.2d 298, 302, 546 N.Y.S.2d 818, 545 N.E.2d 1206; *see, Servidone Constr. Corp. v. Security Ins. Co.,* 64 N.Y.2d 419, 424, 488 N.Y.S.2d 139, 477 N.E.2d 441). In the present appeal, National asks this Court to hold that the converse is also true. According to National, the complaint allegations are, in all cases, the sole determining consideration and, consequently, an insurer is relieved of the duty to defend whenever the complaint allegations do not on their face set forth a covered cause of action. However, the position National advocates is neither compelled by our prior case law nor consistent with sound legal principles and policies. Accordingly, we reject it.
>
> The rationale underlying the cases in which the "four corners of the complaint" rule was delineated and applied (*see, e.g., Meyers & Sons Corp. v Zurich Am. Ins. Group, supra; International Paper Co. v. Continental Cas. Co.,* 35 N.Y.2d 322, 361 N.Y.S.2d 873, 320 N.E.2d 619; *Goldberg v. Lumber Mut. Cas. Ins. Co.,* 297 N.Y. 148, 77 N.E.2d 131), is based on the oft-stated principle

that the duty to defend is broader than the duty to indemnify (*see, e.g., Ruder & Finn v. Seaboard Sur. Co.,* 52 N.Y.2d 663, 669–670, 439 N.Y.S.2d 858, 422 N.E.2d 518, *supra*). In other words, as the rule has developed, an insurer may be contractually bound to defend even though it may not ultimately be bound to pay, either because its insured is not factually or legally liable or because the occurrence is later proven to be outside the policy's coverage.

> It follows logically from this principle that an insurer's duty to defend is called into play whenever the pleadings allege an act or omission within the policy's coverage. Even where there exist extrinsic facts suggesting that the claim may ultimately prove meritless or outside the policy's coverage, the insurer cannot avoid its commitment to provide a defense, since "[a] complaint subject to defeat because of debatable theories ... must [nevertheless] be defended by the insured." (*International Paper Co. v Continental Cas. Co., supra,* at 326, 361 N.Y.S.2d 873, 320 N.E.2d 619.) Accordingly, the courts of this State have refused to permit insurers to look beyond the complaint's allegations to avoid their obligation to defend and have held that the duty to defend exists "[i]f the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased" (*Technicon Elecs. Corp. v American Home Assur. Co., supra,* at 73, 544 N.Y.S.2d 531, 542 N.E.2d 1048). The holdings thus clearly establish that an insurer's duty to defend is at least broad enough to apply when the "four corners of the complaint" suggest the reasonable possibility of coverage.

> However, to say that the duty to defend is at least broad enough to apply to actions in which the complaint alleges a covered occurrence is a far cry from saying that the complaint allegations are the sole criteria for measuring the scope of that duty. Indeed, in these circumstances, where the insurer is attempting

to shield itself from the responsibility to defend despite its actual knowledge that the lawsuit involves a covered event, wooden application of the "four corners of the complaint" rule would render the duty to defend narrower than the duty to indemnify—clearly an unacceptable result. For that reason, courts and commentators have indicated that the insurer must provide a defense if it has knowledge of facts which potentially bring the claim within the policy's indemnity coverage (*see, e.g., Lowenstein Dyes & Cosmetics v. Aetna Life & Cas. Co.*, 524 F.Supp. 574, 576, affd. 742 F.2d 1437; *Tennessee Corp. v Hartford Acc. & Indem. Co.*, 326 F.Supp. 520, 524, affd. 463 F.2d 548; *Evan v. Employers Mut. Liab. Ins. Co.*, 391 F.Supp. 1230, 1231–1232; *National Indem. Co. v. Flesher*, 469 P.2d 360, 366 [Alaska 1970]; *Fresno Economy Import Used Cars v. United States Fid. & Guar. Co.*, 76 Cal. App.3d 272, 278–279, 142 Cal.Rptr. 681; *Mullen v. Glens Falls Ins. Co.*, 73 Cal. App.3d 163, 169–170, 140 Cal.Rptr. 605; *Loftin v. United States Fire Ins. Co.*, 106 Ga.App. 287, 127 S.E.2d 53; *LaRotunda v. Royal Globe Ins. Co.*, 87 Ill App 3d 446, 87 Ill.App.3d 446, 42 Ill.Dec. 219, 408 N.E.2d 928; *New Hampshire Ins. Co. v. Christy*, 200 N.W.2d 834, 838–839 [Iowa 1972]; *Patrons Mut. Ins. Assn. v. Harmon*, 240 Kan. 707, 732 P.2d 741; *Shepard Mar. Constr. Co. v. Maryland Cas. Co.*, 73 Mich.App. 62, 250 N.W.2d 541 (1976); *Lanoue v. Fireman's Fund Am. Ins. Cos.*, 278 N.W.2d 49, 53 [Minn. 1979]; *Iowa Natl. Mut. Ins. Co. v. Universal Underwriters Ins. Co.*, 276 Minn. 362, 150 N.W.2d 233; *Marshall's U.S. Auto Supply v. Maryland Cas. Co.*, 354 Mo. 455, 189 S.W.2d 529; *Commercial Pipe & Supply Corp. v. Allstate Ins. Co.*, 36 A.D.2d 412, 321 N.Y.S.2d 219, *affd* 30 N.Y.2d 619, 331 N.Y.S.2d 42, 282 N.E.2d 128; *Sucrest Corp. v. Fisher Governor Co.*, 83 Misc.2d 394, 402–403, 371 N.Y.S.2d 927; Ostrager & Newman, Insurance Coverage Disputes § 5.02[a], at 122–123 [3d ed]; 7C Appleman, Insurance Law and Practice § 4683, at 56 [Berdal ed]; id., § 4684.01, at 96–97; at 17 [1990 Pocket Part]; but *see, Sussman v. American Sur. Co.*, 345 F.2d 679; *Massachusetts Turnpike Auth. v. Perini Corp.*, 349 Mass. 448, 208 N.E.2d 807; *Allstate Ins. Co. v. Coriell*, 30 Ohio Misc. 67, 284 N.E.2d 202 [criticized in 7C Appleman, op. cit., § 4684.01, at 92, n 13] ).

We agree with these authorities and hold that, rather than mechanically applying only the "four corners of the complaint" rule in these circumstances, the sounder approach is to require the insurer to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage (*see generally*, 7C Appleman, op. cit., § 4684.01, at 95). This holding fits easily and appropriately within the existing rules governing coverage disputes (*see, Commercial Pipe & Supply Corp. v Allstate Ins. Co.*, *supra*; *Sucrest Corp. v Fisher Governor Co.*, *supra* ), which certainly do not require us to extend the "four corners of the complaint" rule to a situation such as this one, where it has not been applied before and, in fact, has no apparent value. Although it has been argued that the "four corners of the complaint" rule has the advantage of certainty (*see*, dissenting opn, at 73), there is no reason to believe that the rule we adopt here will engender any more litigation.

*Fitzpatrick*, 78 N.Y.2d at 64–68, 571 N.Y.S.2d 672, 575 N.E.2d 90.

*Fitzpatrick* and *Garvis* were both relied on by the Wyoming Supreme Court and provide a logical framework for analyzing the situations where the insurance company has knowledge that the complaint may be incorrect. As stated in *Employers Ins. of Wausau v. Duplan Corporation*, 899 F.Supp. 1112, 1124 (S.D.N.Y.1995), "Despite the certainty provided by the four corners rule, the duty to defend derives from the insurer's contract with the insured, not from the complaint.... Measuring the duty to defend by the complaint's

allegations alone undermines that principle, even though it may provide the insurer the comfort of certainty (not to mention an escape from responsibility under the policy)."

The court finds that there is a material issue of fact as to whether Mr. Sabins was a partner in Beartooth Construction and whether Commercial Union had knowledge of facts indicating that Mr. Sabins was a partner, and therefore covered under the liability policy. Accordingly, Commercial Union's motion for summary judgment as to the duty to defend should be denied.

■ The court also finds, however, that Commercial Union's motion for summary judgment on bad faith should be granted. Commercial Union contends that it is entitled to judgment as a matter of law because there can be no claim for bad faith where the policy provided no coverage for the loss in question. However, defendant's argument is inapposite as there remains a genuine issue of fact as to whether insurance coverage for the loss existed.

■ Commercial Union also contends that the bad faith claim fails as a matter of law because even if coverage were triggered by the underlying lawsuit, the issue of coverage is fairly debatable. Defendant relies on *Hutchinson Oil Co. v. Federated Service Ins. Co.*, 851 F.Supp. 1546, 1557 (D.Wyo.1994) as support for its argument. Unlike Ms. Sabins' third-party claim, *Hutchinson Oil Co.* involved a first-party bad faith claim. First-party bad faith arises when insurers refuse to pay contract benefits directly to their insureds without a "fairly debatable" basis for such refusal, while an action for third-party bad faith can be prosecuted by an insured only against the insured's liability insurer for failure to exercise good faith in settling a claim asserted against the insured by third parties. Glenn E. Smith, *Understanding the Tort of Third–Party Bad Faith in Wyoming: Western Casualty & Surety Company v. Fowler Revisited*, 26 LAND & WATER L. REV. 635, 637–38 (1991).

In *Jarvis v. Farmers Ins. Exchange*, 948 P.2d 898, 901 (Wyo.1997), the Wyoming Supreme Court distinguished first and third-party bad faith actions:

> The separate duties found in first-party and third-party bad faith actions have been clearly delineated. *Shrader*, 882 P.2d at 825–26. Situations involving only the insured and its insurer cannot be compared to those in which a third party brings a claim against the insured and independently determines whether to be reasonable in settlement or in valuation of his claim. Thus, the Jarvises' reliance on the language in cases describing the duty of the insurer in first-party bad faith actions will not apply when deciding whether, apart from duty, an excess judgment is a prerequisite in third-party bad faith actions. *See Darlow*, 822 P.2d at 827 (the duty owed to an insured is often characterized by the nature of the claim).

The *Jarvis* decision specifically addressed whether an insured must plead the existence of a judgment in excess of policy limits as a prerequisite to a claim of third-party bad faith against an insurer. The court found that an excess judgment was a prerequisite to a bad faith cause of action:

> [W]e decline to extend a cause of action for bad faith for failure of the insurer to initially settle a claim which is followed by a judgment or settlement within policy limits. . . . A cause of action by an insured against the insurer for a failure, in bad faith, to settle a claim will not accrue prior to the entry of a judgment against the insured in excess of policy limits.

*Jarvis*, 948 P.2d at 901–902.

The judgment entered against Mr. Clark and Mr. Hunter awarded Ms. Sabins $700,000 in total and provided that, "this Judgment entered herein shall be satisfied, if at all, solely and exclusively from the proceeds of any insurance policies which may provide coverage for the causes of action asserted herein, and the causes of acts upon all such policies are fully assigned to the Plaintiff." (Plaintiff's Brief in Opposi-

tion to Defendant's Motion for Summary Judgment, Exhibit 5.7)

The declarations in the Beartooth Construction insurance policy shows the following liability coverages:

Bodily Injury Liability— $1,000,000
Property Damage Liability— $ 500,000
Personal Injury & Advertising
Injury Liability $1,000,000

(Defendant's Brief in Support of Motion for Summary Judgment, Exhibit 1)

The $700,000 judgment against Mr. Clark and Mr. Hunter was within the policy limits and the judgment specifically provided that the judgment would be satisfied from the insurance proceeds. As a matter of law, therefore, neither Mr. Hunter nor Mr. Clark, nor their assignee, can establish a bad faith claim for relief.

NOW, THEREFORE, IT IS HEREBY ORDERED that defendant's Motion for Summary Judgment is DENIED as to its duty to defend Mr. Hunter and Mr. Clark. It is further

ORDERED that defendant's Motion for Summary Judgment is GRANTED as to plaintiff's claim for bad faith.