Cathleen Bang ANDERSON, Appellant,

v.

AMCO INSURANCE COMPANY,
Respondent.

No. C2–95–1168.

Court of Appeals of Minnesota.

Dec. 12, 1995.

Review Denied Feb. 9, 1996.

Debra J. Teuchert, Bloomington, for Appellant.

Timothy J. Leer, Teresa M. Croke, Johnson & Condon, P.A., Minneapolis, for Respondent.

Considered and decided by HUSPENI, P.J., and SCHUMACHER and WILLIS, JJ.

## OPINION

HUSPENI, Judge.

Appellant insured challenges the summary judgment awarded to respondent insurer on the ground that, absent contrary provisions in a policy, a no-fault insurer is not liable for the psychiatric treatment of panic attacks that do not result from physical injuries. Because we hold that neither the No–Fault Act nor appellant's policy made respondent liable for the treatment of appellant's panic attacks, we affirm.

## FACTS

Appellant Cathleen Bang Anderson, an attorney, was involved in an automobile accident. Respondent AMCO Insurance Company, her no-fault insurance carrier, paid medical expenses and economic losses resulting from her neck and back injuries.

Appellant now seeks coverage for psychological treatment for panic attacks. She claims that these attacks arise out of the accident; she does not claim that they arise from the injuries to her neck and back. While the attacks have produced some physical effects, appellant has not sought treatment for those effects.[1] AMCO denied coverage for treatment of or losses related to the panic attacks.

## ISSUES

1. Does the No–Fault Act provide for treatment of psychological injuries?

2. Did the policy provide for treatment of psychological injuries?

3. Did appellant have a reasonable expectation of coverage for psychological injuries under her no-fault policy?

## ANALYSIS

### Standard of Review

On an appeal from summary judgment, this court asks whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). All three issues here involve legal issues and are therefore reviewed de novo. *See Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985) (the construction of a statute is clearly a question of law and thus fully reviewable by an appellate court); *State Farm Ins. Cos. v. Seefeld*, 481 N.W.2d 62, 64 (Minn.1992) ("Insurance coverage issues are questions of law for the court.").

### 1. Does the Minnesota No–Fault Act mandate coverage?

[A] statute is to be read and construed as a whole so as to harmonize and give effect to all its parts. Moreover, various provisions of the same statute must be interpreted in the light of each other, and the legislature must be presumed to have understood the effect of its words and intended the entire statute to be effective and certain.

*Van Asperen v. Darling Olds, Inc.*, 254 Minn. 62, 73–74, 93 N.W.2d 690, 698 (1958). We must therefore construe the No–Fault Act to give effect to all its provisions. Minn.Stat. § 65B.43, subd. 7 (1994), defines loss as:

economic detriment resulting from the accident causing the injury, consisting only of medical expense, income loss, [and] replacement services loss * * *. Non-economic detriment is not loss; however, economic detriment is loss although caused by pain and suffering or physical or mental impairment.

---

1. Appellant has experienced these attacks while driving and also in court. A physician described them as "spells during which she feels her heart is racing, her legs are weak, she feels vertiginous and occasionally nauseous, and occasionally her mouth feels dry."

Minn.Stat. § 65B.43, subd. 11 (1994), defines injury as: "bodily harm to a person and death resulting from that harm." Other references firmly establish the requirement that loss be caused by injury.

> If [an] accident causing injury occurs in this state, every person suffering *loss from injury* arising out of maintenance or use of a motor vehicle * * * has a right to basic economic loss benefits.

Minn.Stat. § 65B.46, subd. 1 (1994) (emphasis added).

> Basic economic loss benefits shall provide reimbursement for all *loss suffered through injury* arising out of the maintenance or use of a motor vehicle * * * and shall provide a maximum of $40,000 for loss arising out of the injury of any one person, consisting of:
>
> (a) $20,000 for medical expense *loss arising out of injury* to any one person * * *.

Minn.Stat. § 65B.44, subd. 1 (1994) (emphasis added). Because the statute both explicitly defines injury as bodily harm and mandates reimbursement for loss "from" or "suffered through" or "arising out of" injury, we construe the statute to provide reimbursement for loss resulting from bodily harm. This *statutory construction is harmonious* with the definition of loss as economic detriment caused by pain and suffering or physical or mental impairment if injury (bodily harm) is seen as the initial cause of the pain and suffering or physical or mental impairment, which then causes the loss. Loss then fits all provisions of the statute: if injury (bodily harm) causes pain and suffering or physical or mental impairment, and loss is caused by pain and suffering or physical or mental impairment, loss is "from" or "arising out of" or "through" injury (bodily harm).

Appellant makes no claim, however, that her mental impairment was caused by her bodily harm or injury. Therefore, the loss resulting from that mental impairment is not within the provisions of the No–Fault Act.[2]

## 2. Did the policy provide coverage?

Appellant's no-fault policy defines "bodily injury" as "bodily harm, sickness or disease, including death that results" and states that the insurer will

> pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury"
>
> 1. Caused by accident; and
> 2. Sustained by an "insured."

Appellant argues that the definition of "bodily harm" should be construed to include "panic attacks." We disagree and conclude that such construction goes against common usage. *See American Heritage Dictionary* 210 (3d ed.1992); *Black's Law Dictionary* 159 (5th ed.1979) (both defining "bodily" by distinguishing it from "mental").

Minnesota case law also refutes appellant's definition. *See Garvis v. Employers Mut. Casualty Co.*, 497 N.W.2d 254, 257 (Minn. 1993) (holding in answer to a certified question that "an injury to the body does not include nonbodily emotional distress"); *Clemens v. Wilcox*, 392 N.W.2d 863, 866 (Minn. 1986) ("bodily injury" does not include nonphysical harm, such as mental suffering and emotional distress); *Hamlin v. Western Nat'l Mut. Ins. Co.*, 461 N.W.2d 395, 397 (Minn.App.1990) (a policy definition of bodily injury as bodily injury, sickness, or disease is unambiguous and excludes mental injuries).

Appellant relies on a holding from *Garvis:* "emotional distress with appreciable physical manifestations does constitute a 'bodily inju-

---

**2.** Recognizing the potential ambiguity in the statutory language, one commentator has observed:
There is potential discrepancy between the definitions of *loss* and *injury*. The definition of *injury* requires bodily harm. There is, thus, a potential for excluding from coverage psychological or emotional injuries arising out of a motor vehicle accident, unless bodily harm arises out of the psychological or emotional injury. However, the definition of *loss* states that economic detriment caused by pain and

suffering is loss. There is no requirement that bodily harm occur. To reconcile the two provisions, the definition of *injury* would have to be reformed to include emotional or psychological injuries.
1 Michael J. Steenson, *Minnesota No–Fault Automobile Insurance* at 32 n. 18 (2d ed.1995). Because the legislature has not reformed the definition of injury in the no-fault statute, we are constrained to use a construction that gives effect to the existing definition.

ry.'" *Garvis,* 497 N.W.2d at 258. *Garvis* is readily distinguishable on two grounds: first, it concerns not a no-fault insurance policy but an insurer's alleged duty to defend and indemnify a claim of intentional infliction of emotional distress under a general liability policy, and second, appellant has neither alleged nor sought treatment for appreciable physical manifestations of her emotional distress; she has sought only psychological treatment for the distress itself. Appellant's reliance on *Garvis* also is misplaced because *Garvis* denied coverage on the grounds that the complaint included no allegation of physical manifestations of the emotional distress. *Id.* at 257–58. Appellant's complaint likewise contained no such allegations; she seeks recovery only for treatment for the panic attacks and wage loss resulting from her inability to drive.

### 3. Does the reasonable expectations doctrine apply?

[T]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.

*Hubred v. Control Data Corp.,* 442 N.W.2d 308, 311 (Minn.1989) (quoting *Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.,* 366 N.W.2d 271, 277 (Minn.1985)). Appellant argues that she had a reasonable expectation that losses resulting from her panic attacks would be covered.

The doctrine [of reasonable expectations] does not remove from the insured the responsibility to read the policy but at the same time does not hold the insured to an unreasonable level of understanding of the policy. * * * In short, the doctrine asks whether the insured's expectation of coverage is reasonable given all the facts and circumstances.

*Id.* Appellant claims neither that she failed to read her insurance contract nor that she was unable to understand it. Instead, she relies on three criteria to be used in determining the reasonableness of the insured's expectation: ambiguity, hidden exclusions, and the general public's knowledge of the provisions.

 Appellant asserts that the No–Fault Act is ambiguous because it uses the phrases "bodily harm" and "injury" instead of the phrase "bodily injury," which has been defined in other areas of case law; she further claims that insurance policies written to conform to the statute are ambiguous "by implication." However, the fact that a statute uses and defines terms other than the terms used in unrelated case law does not ipso facto render either the statute or policies conforming to it ambiguous.

Appellant claims that because her policy tries to construe the statutory language to exclude treatment for pain and suffering or a mental impairment, it contains a hidden exclusion. However, statutes are construed not by policy writers but by the courts. *See, e.g., Kerber v. Allied Group Ins.,* 516 N.W.2d 568, 569 (Minn.App.1994) (to ensure consistency, arbitrators decide only issues of fact; the interpretation of the No–Fault Act is left to the courts). Appellant offers no support for her final argument that members of the public assume all necessary medical care is covered by their policies. Given that policies invariably contain exclusions and limitations on coverage, the assumption would seem unwarranted.

While appellant may indeed have expected that her no-fault policy, despite its language, would cover losses resulting from her panic attacks, there is no evidence that her expectation was reasonable.

### DECISION

Neither the no-fault statute nor appellant's policy provides coverage for psychological injuries that do not arise out of physical injuries. Given the language of appellant's policy, any expectation that it would provide coverage was unreasonable.

**Affirmed.**