2003 ND 24

Jamie HARTMAN, Plaintiff, Appellee and Cross–Appellant,

v.

ESTATE OF Anthony J. MILLER, deceased, aka Tony J. Miller, deceased, Defendant,

and

American Family Mutual Insurance Company, Defendant, Appellant and Cross–Appellee.

No. 20020167.

Supreme Court of North Dakota.

Feb. 19, 2003.

Charles T. Edin (argued), Charles T. Edin, P.C. Law Office, and Robert V. Bolinske, Bismarck, N.D., for plaintiff, appellee and cross-appellant.

William C. Severin, Severin, Ringsak & Morrow, Bismarck, N.D., for defendant, appellant and cross-appellee.

SANDSTROM, Justice.

[¶ 1] American Family Mutual Insurance ("American Family") appeals from a judgment awarding its insured, Jamie Hartman, damages for American Family's bad faith in handling her claim for uninsured motorist coverage. Hartman cross-appeals from a partial summary judgment denying her no-fault benefits for treatment of post-traumatic stress disorder. We hold American Family was not entitled to judgment as a matter of law on Hartman's bad-faith claim, and emotional injuries with physical manifestations are a bodily injury under the insurance policy's no-fault provisions. We affirm in part, reverse in part, and remand for further proceedings.

I

[¶ 2] Hartman was injured in a single vehicle rollover in November 1998, while riding in a pickup owned and driven by Anthony Miller. Miller's pickup was uninsured, but Hartman was an additional insured under her mother's family car policy with American Family. Hartman and Miller were involved in a relationship when Hartman lived in Dickinson. Hartman ended their relationship in July 1998, after Miller had threatened her. Hartman then moved to Bismarck and lived with her mother. In November 1998, Hartman agreed to meet with Miller. On November 27, 1998, Miller met Hartman after she finished work, and they went to two bars in Bismarck, where they consumed alcoholic beverages. During the evening, Miller became upset and jealous. He subsequently drove himself and Hartman around Bismarck, and he eventually pulled off Highway 83 north of Bismarck and rapidly accelerated his pickup on a gravel road. Miller's pickup began to fishtail and rolled several times, injuring both Miller and Hartman. As a result of the rollover, Miller was charged with reckless endangerment.

[¶ 3] Miller later died as a result of injuries sustained in an unrelated accident. In July 2000, Hartman sued Miller's estate for negligence and American Family for no-fault benefits to treat post-traumatic stress disorder and for uninsured motorist coverage. Hartman alleged American Family's conduct in refusing to pay benefits and in failing to pay those benefits in a timely manner breached American Family's obligation to act in good faith and to deal fairly with her. American Family answered that post-traumatic stress disorder was not a bodily injury for purposes of no-fault benefits. American Family also claimed the rollover was not an "accident" for purposes of uninsured motorist coverage and it was permitted to raise any

defenses available to Miller on the issues of liability and damages. *See Fetch v. Quam,* 530 N.W.2d 337, 341 (N.D.1995) (allowing insurer unrestricted intervention to present all claims and defenses that uninsured motorist could have raised).

[¶ 4] American Family moved for partial summary judgment on Hartman's claim for no-fault benefits to treat post-traumatic stress disorder. Hartman discovered a statement by Miller to a Dickinson law enforcement officer in which Miller said he did not intend to kill Hartman and he would have driven the pickup off a bridge or into a bridge if he had wanted to kill her. Hartman thereafter moved to amend her complaint to allege a separate bad-faith claim that American Family breached its obligation of good faith and fair dealing when, without conducting a reasonable investigation, it denied Hartman's claim for uninsured motorist coverage on the ground the rollover was not an accident. American Family then moved for a "declaratory judgment" determination that the rollover was not an accident.

[¶ 5] The trial court granted American Family partial summary judgment on Hartman's claim for medical expenses to treat post-traumatic stress disorder, concluding the disorder was not a "bodily injury" under the applicable no-fault law. The court denied American Family's motion for "declaratory judgment," concluding factual issues existed about whether the rollover was an accident. The court also granted Hartman's motion to amend her complaint to allege American Family acted in bad faith in denying her claim for uninsured motorist coverage without conducting a reasonable investigation.

[¶ 6] A jury found the rollover was an accident, Miller was 75% at fault and Hartman was 25% at fault for Hartman's damages, and Hartman incurred $2,200 in past economic damages, $2,750 in future economic damages, and $5,000 in past noneconomic damages. The jury also found American Family acted in bad faith in handling Hartman's uninsured motorist claim, and awarded her $20,000 for the bad-faith claim, plus reasonable costs, expenses, and attorney fees. American Family appealed, and Hartman cross-appealed.

[¶ 7] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. American Family's appeal and Hartman's cross-appeal are timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

II

[¶ 8] American Family argues the trial court abused its discretion in granting Hartman's motion to amend her complaint to allege bad faith. American Family argues discovery of Miller's statement to a Dickinson law enforcement officer did not resolve whether the rollover was an accident. American Family argues coverage was fairly debatable with or without that statement, and it was not bad faith as a matter of law to assert a coverage dispute. American Family argues the bad-faith issue should not have been submitted to the jury.

A

[¶ 9] Complaints are construed liberally to accomplish substantial justice. *Kaler v. Kraemer,* 1998 ND 56, ¶ 7, 574 N.W.2d 588. Rule 15(a), N.D.R.Civ.P., permits amendments to pleadings and authorizes a trial court to freely grant amendments when justice requires. A trial court may grant or deny amendments to pleadings under N.D.R.Civ.P. 15(a), and we will not reverse the court's decision absent an abuse of discretion. *Messiha v. State,* 1998 ND 149, ¶ 7, 583 N.W.2d 385.

A trial court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Narum v. Faxx Foods, Inc.*, 1999 ND 45, ¶ 29, 590 N.W.2d 454.

[¶ 10] Hartman's initial complaint alleged American Family was responsible for certain no-fault benefits, including medical expenses to treat post-traumatic stress disorder, and Hartman was also entitled to uninsured motorist coverage. Hartman alleged American Family's refusal to pay those benefits in a timely manner constituted a breach of American Family's obligation to act in good faith and to deal fairly with her. Hartman's amended complaint added a separate allegation that American Family failed to conduct a reasonable investigation of her claim. Although American Family asserts Hartman's initial complaint alleged bad faith only for the failure to pay no-fault benefits to treat post-traumatic stress disorder, a liberal construction of that complaint is that her bad-faith claim alleged the failure to pay both no-fault benefits and uninsured motorist coverage in a timely manner. Moreover, in granting Hartman's motion to amend her complaint, the trial court recognized that amendments should be freely given when justice requires. The court said the bad-faith issue was a jury question, because evidence of Miller's statement to the Dickinson law enforcement officer could be considered evidence of a failure to investigate. The court also decided American Family had ample opportunity to prepare for issues raised by the amendment. Under these circumstances, we cannot say the trial court's decision to allow Hartman to amend her complaint was arbitrary, unconscionable, or unreasonable, or was not the product of a rational mental process leading to a reasoned decision. We conclude the court did not abuse its discretion in allowing Hartman to amend her complaint.

B

[¶ 11] American Family argues the trial court erred in denying its motion for judgment as a matter of law on Hartman's bad-faith claim. In *Peterson v. Traill County*, 1999 ND 197, ¶ 7, 601 N.W.2d 268 (citations omitted), we outlined our standard of review of a motion for judgment as a matter of law:

The standard of review on a motion for judgment as a matter of law under N.D.R.Civ.P. 50 is the same as the standard applied to motions for directed verdict before the rule was modified in 1994. The trial court's decision on a motion brought under N.D.R.Civ.P. 50 to grant or deny judgment as a matter of law is based upon whether the evidence, when viewed in the light most favorable to the party against whom the motion is made, leads to but one conclusion as to the verdict about which there can be no reasonable difference of opinion. In determining whether the evidence is sufficient to create an issue of fact, the trial court must view the evidence in the light most favorable to the non-moving party, and must accept the truth of the evidence presented by the non-moving party and the truth of all reasonable inferences from that evidence. A trial court's decision on a motion for judgment as a matter of law is fully reviewable on appeal.

[¶ 12] An insurer has a duty to act fairly and in good faith in dealing with its insured, including a duty of fair dealing in paying claims, providing defenses to claims, negotiating settlements, and fulfilling all other contractual obligations. *See Fetch v. Quam*, 2001 ND 48, ¶ 12, 623 N.W.2d 357; *Corwin Chrysler–Plymouth,*

*Inc. v. Westchester Fire Ins. Co.,* 279 N.W.2d 638, 643 (N.D.1979). The gravamen of the test for bad faith is whether the insurer acts unreasonably in handling an insured's claim. *Fetch,* at ¶ 12. An insurer acts unreasonably by failing to compensate an insured for a loss covered by a policy, unless the insurer has a proper cause for refusing payment. *Id.* at ¶ 13. In *Fetch,* at ¶ 18, we said, as a matter of law, an insurer is not guilty of bad faith for denying a claim if the claim is fairly debatable, or if there is a reasonable basis for denying the claim or delaying payment. Whether an insurer acts in bad faith is ordinarily a question of fact. *Id.* at ¶ 12; *Corwin Chrysler–Plymouth,* at 643–44.

[¶ 13] American Family's policy provided uninsured motorist coverage for compensatory damages for "bodily injury," which Hartman was legally entitled to recover from Miller. The policy required the bodily injury to be caused by an "accident" arising out of the use of the uninsured motor vehicle, but did not define "accident." American Family argues it was entitled to judgment as a matter of law on Hartman's bad-faith claim because further investigation would not have resolved whether the rollover was an accident. American Family argues that issue remained fairly debatable one week before trial and argues a coverage issue that must be submitted to a jury is fairly debatable as a matter of law.

[¶ 14] In *Wall v. Pennsylvania Life Ins. Co.,* 274 N.W.2d 208, 216 (N.D.1979) (quoting *Continental Cas. Co. v. Jackson,* 400 F.2d 285, 288 (8th Cir.1968)), when the word accident was not defined in an insurance policy, this Court said:

> " 'The word "accident" as used in this case means happening by chance, unexpectedly taking place, not according to the usual course of things.

> " 'You are instructed in this regard that if the insured does a voluntary act, the natural and usual, and to be expected result of which is to bring injury upon himself, then ... [an injury] so occurring is not an accident. But *if the insured does a voluntary act, without knowledge or reasonable expectation that the result thereof will be to bring injury upon himself ... then a bodily injury ... is caused by accident.' "*

(Alteration in original.)

[¶ 15] In *Corwin Chrysler–Plymouth,* 279 N.W.2d at 644, in the context of a bad-faith claim against an insurer, this Court said an insurer is held to know North Dakota law regarding the interpretation of an insurance contract. The insurer in that case claimed the insurance policy did not cover employee embezzlement because the embezzlement did not occur when the policy was in force. *Id.* at 641–42. This Court said the policy did not define the time when the loss through employee embezzlement must occur, and the insured was held to know that because the policy was ambiguous and would support one interpretation that supported liability and one that did not, the interpretation that supported liability would be adopted. *Id.* at 642 (citing *Wall,* 274 N.W.2d at 215). This Court held the trial court's finding of bad faith was not clearly erroneous, concluding if litigation ensued, the insurer undoubtedly would be liable for the balance of the insured's claim because the insurer had no valid ground to continue to deny liability after the employee explained she took all but, at most, $500 during the period of coverage. *Id.* at 644.

[¶ 16] American Family is held to know North Dakota law regarding the meaning of accident in an insurance policy, and the trial court instructed the jury on that definition. Here, Burleigh County Deputy Robert Benson investigated the rollover

and interviewed Miller at the scene of the accident. According to Benson, Miller stated he "had turned the corner, accelerated, kicked her down, and began to fishtail and he lost control of the vehicle." Hartman stated Miller was jealous and upset and talked about death and dying before the rollover, and he intentionally accelerated his pickup and caused it to fishtail. Hartman testified that a few days after the rollover, Miller told her the rollover was an accident and was not done on purpose. According to Burleigh County Deputy Gary Schaffer, Hartman told him that Miller was angry and had intentionally accelerated his pickup and driven wild on purpose. Deputy Schaffer testified that after looking at Deputy Benson's crash report and speaking with Hartman's mother, he had concerns about whether the rollover was intentional and believed Miller "was attempting to seriously hurt or kill either himself or [Hartman], or both." Deputy Schaffer testified that as a result of the rollover, Miller was charged with felony reckless endangerment, which is defined in N.D.C.C. § 12.1–17–03 as creating a substantial risk of serious bodily injury or death to another under circumstances manifesting extreme indifference to the value of human life. Deputy Schaffer also contacted Dickinson Police Officer Charles Rummel after learning that Miller had threatened Hartman in Dickinson in July 1998. Rummel interviewed Miller about the rollover. Miller told Rummel the rollover was not intentional and was an accident. Miller told Rummel that if he had intentionally wanted to harm Hartman, he would have driven the vehicle off a bridge or into a bridge.

[¶ 17] American Family's in-house counsel raised the accident issue in an internal memo on June 28, 1999, and suggested getting an admission from Miller that he intended to roll the vehicle and to kill or hurt Hartman. American Family has cited no evidence to show it followed that suggestion. Rather, Sharon Many Horses, an American Family claim adjuster, testified Miller gave American Family a December 1998 statement that he "was just screwing around" when the rollover occurred, and she was "not sure how to answer" a question regarding what evidence American Family had to indicate the rollover was intentional.

[¶ 18] Hartman's initial complaint alleged her bad-faith claim was based on American Family's refusal to pay benefits in a timely manner. The rollover occurred on November 27, 1998. In July 2000, twenty months after the rollover, Hartman sued American Family for uninsured motorist coverage and for no-fault benefits. Although American Family claimed the rollover was the result of Miller's intentional conduct and was not an accident, American Family did not bring a separate declaratory judgment action during those twenty months to resolve the uncertainty about coverage. See N.D.C.C. § 32–23–06 (authorizing declaratory judgment to decide coverage or duty to defend); *Midwest Cas. Ins. Co. v. Whitetail*, 1999 ND 133, ¶ 12, 596 N.W.2d 341 (holding factual disputes about coverage may be decided in declaratory judgment action). Many Horses testified that until Hartman's lawyer sent a demand to American Family, it had done "nothing" with the file, and Many Horses testified American Family never denied Hartman's claim.

[¶ 19] The trial court instructed the jury that American Family's duty to act in good faith in dealing with Hartman included a duty of fair dealing in paying claims, providing defenses to claims, negotiating settlements, and fulfilling its contractual obligations. See *Fetch*, 2001 ND 48, ¶ 12, 623 N.W.2d 357; *Corwin Chrysler–Plymouth*, 279 N.W.2d at 643. Whether American Family breached that duty in this case is a

question of fact. *See Fetch,* at ¶ 12; *Corwin Chrysler–Plymouth,* at 643–44. Although American Family initially may have questioned whether the rollover was an accident, American Family is held to know North Dakota law regarding the meaning of accident in an insurance policy, and its failure to resolve the coverage issue and to require its insured to bring an action twenty months after the rollover is evidence of bad faith. We conclude American Family was not entitled to judgment as a matter of law on Hartman's bad-faith claim.

C

[¶ 20] Relying on *Whitetail,* 1999 ND 133, 596 N.W.2d 341, American Family argues the trial court erred in denying its motion for "declaratory judgment" because there was conflicting evidence about whether the rollover was an accident. American Family's reliance on *Whitetail* is misplaced. In *Whitetail,* at ¶ 3, an insurer brought a declaratory judgment action to determine coverage. We concluded there were disputed issues of fact about coverage and duty to defend, and in the context of the declaratory judgment action, we reversed and remanded for a determination of those issues. *Id.* at ¶¶ 11–15. American Family's motion for "declaratory judgment" in Hartman's action against Miller and her insurer was, in effect, a motion for summary judgment on the issue of whether the rollover was an accident. On this record, American Family was not entitled to summary judgment in its favor on that issue.

III

[¶ 21] American Family argues the trial court abused its discretion in refusing to offset economic damages awarded to Hartman to the extent of no-fault benefits paid or to be paid by American Family. The jury awarded Hartman $2,200 in past economic damages and $2,750 in future economic damages. American Family claims it paid Hartman $6,940 in no-fault benefits for economic loss for Hartman's past medical bills and sought a setoff from the $4,950 awarded to her for economic damages. American Family argues it has already paid more in no-fault benefits for economic loss than the jury awarded and claims it is entitled to a setoff under N.D.C.C. § 26.1–41–08 against past and future economic loss to the extent American Family has paid or will pay no-fault benefits.

[¶ 22] Basic no-fault benefits are benefits for economic loss from accidental bodily injury and are limited to $30,000 per person for one accident. N.D.C.C. § 26.1–41–01(2). Economic loss means medical expenses, rehabilitation expenses, work loss, replacement services loss, survivors' income loss, survivors' replacement services loss, and funeral, cremation, and burial expenses. N.D.C.C. § 26.1–41–01(7). Under N.D.C.C. § 26.1–41–06(1)(a), Hartman was entitled to basic no-fault benefits from American Family.

[¶ 23] Miller's pickup was not insured, and American Family provided Hartman with uninsured motorist coverage under N.D.C.C. ch. 26.1–40. An insurer's right to reduce damages payable to any insured for uninsured motorist coverage is governed by N.D.C.C. § 26.1–40–15.4(1)(b), which authorizes a reduction for amounts paid or payable for coverage for medical payments and personal injury protection.

[¶ 24] In denying American Family's request for an offset, the trial court explained there was no double recovery:

> Evidence of past medical expenses were not allowed into evidence at trial. American Family claims because of the no-fault payments made on Hartman's medical expenses, there would be double

recovery if the verdict was not offset by the amount paid by American Family for medical expenses. It would be unjust to allow American Family to successfully keep out evidence of medical expenses and allow them to offset any amount awarded by the jury for the expenses presented at trial by Hartman's lost wages. The Court also agrees with Hartman that future economic damages in the amount of $2,750 awarded by the jury ... cannot be setoff against the amounts paid by American Family under no-fault for past medical expenses. The request of American Family to offset the jury's award of $4,950 for economic damages is denied.

[¶ 25] Here, the parties do not claim the basic no-fault limit of $30,000 was exhausted. The parties also do not dispute American Family has paid Hartman basic· no-fault benefits of $6,940 for past medical expenses. Hartman did not introduce evidence of those past medical expenses at trial, and her evidence of past economic damages was limited to past wage loss. Although Hartman is not entitled to double recovery for economic damages, the trial court's explanation indicates she has not received a double recovery for economic damages. We are not persuaded the trial court abused its discretion in refusing American Family's request for an offset.

### IV

[¶ 26] In Hartman's cross-appeal, she argues the trial court erred in dismissing her claim for no-fault benefits for medical expenses to treat post-traumatic stress disorder. Hartman argues post-traumatic stress disorder with physical manifestations is a "bodily injury" under American Family's no-fault personal injury protection endorsement.

[¶ 27] Under the personal injury protection endorsement, American Family was obligated to pay for medical expenses incurred for "bodily injury." The policy defined bodily injury to mean "bodily injury to or sickness, disease or death of any person."

[¶ 28] The trial court granted American Family partial summary judgment on Hartman's claim for these no-fault benefits, ruling:

In determining whether bodily injury includes PTSD I rely on *Anderson v. AMCO Ins. Co.*, 541 N.W.2d 8 (Minn. App.1995). The definition and coverage for bodily injury, sickness or disease under *Anderson* case is analogous to North Dakota law and the policy in this case. I find the American [Family] language is not ambiguous and the policy does not cover mental injuries.

The testimony provided by Hartman regarding PTSD and the physical manifestations may relate to the accident, but no evidence related the PTSD to any injury received in the rollover accident. Because the PTSD is not related to any bodily injury received in the accident, it is not covered by the bodily injury language of the policy. I find any PTSD alleged would not be covered under the bodily injury language of the no-fault coverage. I find there is no material issue of fact, and American [Family] is entitled to dismissal of the claim for no-fault benefits as a matter of law.

[¶ 29] In *Anderson*, 541 N.W.2d at 9, the Minnesota Court of Appeals considered an insured's claim for no-fault coverage for psychological treatment of panic attacks that the insured claimed arose out of an automobile accident. The court said although the panic attacks produced some physical effects such as "spells during which she feels her heart is racing, her legs are weak, she feels vertiginous and occasionally nauseous, and occasionally her mouth feels dry," the insured did not seek

treatment for those physical effects. *Id.* at 9 n. 1. The court held Minnesota's statutory no-fault provisions did not mandate coverage for treatment of the panic attacks. *Id.* at 9–10. The court also rejected the insured's argument that the no-fault policy's definition of "bodily harm" should be construed to include "panic attacks," in part because the insured did not allege the panic attacks resulted in physical manifestations. *Id.* at 10–11.

[¶ 30] In *Trinh v. Allstate Ins. Co.,* 109 Wash.App. 927, 37 P.3d 1259, 1260, *review denied,* 147 Wash.2d 1003, 53 P.3d 1007 (2002), an insured witnessed the death of her best friend when he was hit by an uninsured drunk driver while helping the insured change her flat tire. The insured was diagnosed with post-traumatic stress disorder and sought coverage under the uninsured motorist provisions of her automobile insurance policy. *Id.* The insurer claimed post-traumatic stress disorder was not a bodily injury under the insured's uninsured coverage. *Id.* In *Trinh,* 37 P.3d at 1262, 1264, the insured alleged the post-traumatic stress disorder was accompanied by physical manifestations, which included weight loss, hair loss, fragile fingernails, loss of sleep, headaches, stomach pains, and muscle aches. The court said:

> While other jurisdictions are divided on this issue, many courts have held that allegations of physically-manifested emotional distress fall within "bodily injury" coverage in the insurance context. A law review article observes that "[e]ven courts that have concluded that nonphysical harm does not constitute bodily injury have held otherwise when the emotional distress produces discernible physical symptoms." And, many jurisdictions that deny "bodily injury" coverage for purely emotional injuries have indicated that there would be coverage if an emotional injury were accompanied by physical manifestations.

*Id.* at 1262–63 (footnotes omitted).

[¶ 31] The Washington Court of Appeals relied on policy language that defined "bodily injury" to mean "sickness" or "disease" and on persuasive precedent that construed emotional injuries accompanied by physical manifestations to mean bodily injury. *Id.* at 1264. The court concluded "bodily injury" includes emotional injuries that are accompanied by physical manifestations, and the insured had raised a genuine issue of material fact about whether she was a victim of chronic post-traumatic stress disorder with physical manifestations. *Id.*

[¶ 32] In *Muchow v. Lindblad,* 435 N.W.2d 918, 921 (N.D.1989), this Court addressed the bodily harm requirement for a tort claim for negligent infliction of emotional distress and recognized that transitory, non-recurring physical phenomena do not constitute bodily harm, but long and continued physical phenomena may constitute physical illness and bodily harm. *Muchow* is consistent with the conclusion in *Trinh* that bodily injury includes emotional injuries accompanied by physical manifestations.

[¶ 33] Here, American Family's personal injury protection endorsement specifically defined bodily injury to mean "bodily injury to or sickness, disease or death of any person." Under that definition, we agree with the rationale of *Trinh* that post-traumatic stress disorder with physical manifestations falls within that definition of bodily injury. We conclude the term "bodily injury" within the meaning of American Family's personal injury protection endorsement includes post-traumatic stress disorder accompanied by nontransitory physical manifestations.

[¶ 34] Here, Hartman presented evidence the rollover was a substantial con-

tributing cause of her post-traumatic stress disorder, and her disorder resulted in physical manifestations including vomiting, weight loss, severe headaches, loss of sleep, night sweats, and nightmares. We conclude summary judgment on this issue was not appropriate. We reverse the partial summary judgment and remand for proceedings consistent with this opinion.

## V

[¶ 35] Hartman argues she is entitled to attorney fees and costs for this appeal and asks this Court to remand to the trial court to award her additional attorney fees and costs for defending this appeal.

[¶ 36] In *Corwin Chrysler–Plymouth,* 279 N.W.2d at 643, this Court said an insurer who does not act in good faith in handling an insured's claim may be liable for all damages and detriment proximately caused by the breach, including attorney fees. Here, the jury decided Hartman was entitled to recover reasonable costs and expenses, including reasonable attorney fees, incurred in bringing this action. The trial court awarded her attorney fees through the jury trial, but denied her attorney fees for post-judgment proceedings. Because we remand to the trial court for further proceedings, the trial court may consider this issue on remand.

## VI

[¶ 37] We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

[¶ 38] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING and CAROL RONNING KAPSNER, JJ., concur.